**Samuel COLAIZZI and Samuel Indovina, Plaintiffs-Appellants,**

v.

**Daniel WALKER, Governor, State of Illinois, et al., Defendants-Appellees.**

**No. 75–2060.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1976.

Decided Sept. 14, 1976.

970

Wayne B. Giampietro, Phillip E. Freed, Chicago, Ill., for plaintiffs-appellants.

Alan O. Amos, Thomas P. Sullivan, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and STECKLER, District Judge.*

---

* Chief District Judge William E. Steckler of the Southern District of Indiana is sitting by designation.

FAIRCHILD, Chief Judge.

The principal issue for decision in this case is whether defendant Walker's assertions in a press release, that plaintiffs abused their official positions in attempting to force a company under their supervision to drop criminal actions against an employee, deprived plaintiffs of a liberty interest protected by the Fourteenth Amendment. Plaintiffs Samuel Colaizzi and Samuel Indovina appeal from orders of the district court dismissing their claims against several of the defendants, and granting judgment on the pleadings to the rest of the defendants.

At the time of the incident that gave rise to this case, Colaizzi was Superintendent of the Division of Private Employment Agencies of the Illinois Department of Labor, and Indovina was an investigator for that Division. The allegations in the complaint, which we must take to be true on this appeal, state that on or about July 16, 1974, defendant Walker, Governor of Illinois, discharged them from their positions, and simultaneously issued or caused to be issued certain press releases.[1] The complaint alleges the charges in these releases were made without notice or opportunity to be heard.

The complaint alleges jurisdiction based on 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. §§ 1981, 1983, and 1985; and the Fourteenth Amendment. Count I seeks damages and injunctive relief against Governor Walker; Donald Page Moore, Director of the Office of Special Investigations of the State of Illinois; and Lauri Staples, an employee of the Office of Special Investigations. Count II is a pendent state law claim against these three defendants for defamation. Count III alleges a conspiracy among defendants Theodore Maros and Ramon Scully, employees of Zenith Associates, Inc., an Illinois private employment agency, and defendants Walker, Moore and Staples. Finally, Count IV of the complaint sets out a pendent state law claim for defamation

---

1. The principal release read as follows:

"CHICAGO, ILL., July 16—Gov. Dan Walker today (Tuesday) announced the dismissal of Samuel V. Colaizzi, Superintendent of the Division of Private Employment Agencies, Illinois Department of Labor, and Samuel Indovina, an inspector in Mr. Colaizzi's division.

"The Governor's action was taken on the recommendation of Donald Page Moore, Director of Special Investigations.

"Moore's investigation has revealed misconduct by Messrs. Colaizzi and Indovina with reference to Zenith Associates, an employment agency with offices in Chicago, Elmwood Park and Des Plaines, Illinois.

"In October 1973, the owners of Zenith discovered substantial evidence tending to show that one of their employees had surreptitiously taken more than $4,000 in Zenith receipts. They fired the employee, turned the evidence over to the State's Attorney for prosecution, and commenced efforts to obtain reimbursement from the former employee.

"In January, 1974, Colaizzi and Indovina intervened on behalf of the discharged Zenith employee. With careful circumlocution, they repeatedly urged Zenith's owners to 'consider' dropping or reducing their criminal and civil claims. At the same time, they made it unmistakably clear that if (but *only* if) the owners refused to 'cooperate' in this report, Colaizzi would file a series of administrative charges against Zenith alleging various regulatory violations which, if proved, might justify suspension or revocation of Zenith's right to do business.

"Since Colaizzi proposed to appoint himself as the hearing officer to adjudicate the merit of his own charges, his threat was an extremely serious one.

"Zenith's owners consulted counsel and refused to 'cooperate.' Colaizzi, assisted by Indovina, immediately filed a series of extraordinary Department of Labor charges against Zenith, then appointed himself hearing officer, then abandoned the charges after a stormy hearing, then subjected all Zenith's offices to simultaneous inspections by his investigators, then caused Zenith's owners to be arrested by police officers for allegedly operating an office without a license, then abandoned those criminal charges, then filed a new set of administrative charges, conducted new hearings with respect to a few of the new charges, and, finally, suspended Zenith's officers from acting as employment counselors for a three-day period."

A statement announcing the appointment of Colaizzi's successor was issued the same date. In it the Governor stated that Colaizzi and Indovina "attempted to use the power of their office to force a company under their supervision to drop possible criminal actions against an employee." The statement implied that they were "bad apples" among the state's employees.

against Maros, Scully, and Zenith. Defendants are alleged to have known the charges were false.

The district court dismissed the complaint as it related to defendants Walker, Moore and Staples (Counts I, II and III) for failure to state a claim, and granted judgment on the pleadings to defendants Zenith Associates, Maros, and Scully (on Counts III and IV).

■ We agree that the complaint stated no cause of action based on 42 U.S.C. §§ 1981 and 1985. No racial or otherwise class-based invidiously discriminatory animus is alleged. See *Runyon v. McCrary,* —— U.S. ——, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (§ 1981); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (§ 1985). Appellant's boiler-plate pleading fails to state a claim under these statutes.

■ The most serious issue for resolution under Count I is whether Colaizzi and Indovina were deprived of a constitutionally protected liberty interest when Governor Walker issued the press releases without giving them notice or opportunity to be heard. It is important at this juncture to note that plaintiffs do not allege a *property* interest in their jobs such that mere termination without more would have required procedural due process safeguards. *Compare Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) with *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 264, 33 L.Ed.2d 570 (1972). Nor do plaintiffs allege that they were discharged as a penalty for the exercise of any constitutional right. The issue is whether Governor Walker's published allegations under the circumstances of this case deprived plaintiffs of a liberty interest without due process.

In *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), the Supreme Court stated:

Yet, certainly where the State attaches 'a badge of infamy' to the citizen, due process comes into play. [Citation omitted.] '[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.' [Citation omitted.]

Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

The charges contained in the press release allegedly issued by Governor Walker charged sufficiently reprehensible conduct so as to impugn the good name and reputation of Colaizzi and Indovina, and thus appear to fall squarely within the language of *Constantineau.* *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) provides further guidance on the issue. In *Roth,* 408 U.S. at 573, 92 S.Ct. 2701, the Court cited *Constantineau,* and said that had the decision not to rehire Roth been grounded on charges of immorality or dishonesty, notice and an opportunity to be heard would have been required.

Based on *Constantineau* and *Roth,* and on our own decision in *Adams v. Walker,* 492 F.2d 1003, 1007–1008 (7th Cir. 1974), we have no difficulty in holding that the district court erred in this case in dismissing Count I, under § 1983, for failure to state a claim.

Since oral argument appellants have cited *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). There the Supreme Court held that the infliction by the state of a stigma on one's reputation, without more, does not infringe upon a liberty interest protected by Fourteenth Amendment due process safeguards. *Paul v. Davis* neither overruled *Constantineau* nor disavowed the dictum in *Roth,* and we deem it distinguishable here.

In *Paul v. Davis,* a photograph of plaintiff-respondent, bearing his name, was included on a printed flyer of so-called "active shoplifters," and was circulated by two chiefs of police to Louisville, Kentucky merchants during the Christmas shopping season. In fact, respondent Davis had been arrested for, but not convicted of, shoplift-

ing. After the charge giving rise to his inclusion on the flyer had been dismissed, Davis brought a § 1983 action against the police chiefs, alleging that the stain on his reputation resulting from the circulation of the flyer had deprived him of liberty without due process of law.

The Supreme Court held that these facts failed to state a claim for relief under 42 U.S.C. § 1983. In so holding, the Court stated:

> The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts this line of cases does not establish the proposition that reputation alone, *apart from some more tangible interests such as employment,* is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause. *Paul v. Davis, supra,* 424 U.S. at 701, 96 S.Ct. at 1160. [Emphasis added.]

As we read *Paul v. Davis,* stigma to one's reputation, inflicted by the state, is not of itself a deprivation of liberty within the meaning of the Fourteenth Amendment. The Court distinguished the *Roth* dictum in the following language:

> While *Roth* recognized that governmental action defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment:
>
> 'The state *in declining to rehire the respondent,* did not make any charge against him that might seriously damage his standing and associations in his community . . .

> 'Similarly, there is no suggestion that the State, *in declining to re-employ the respondent,* imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. 408 U.S. at 573 [92 S.Ct. at 2707, 33 L.Ed.2d at 558] (emphasis supplied).

> Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment. Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee. *Paul v. Davis,* 424 U.S. 709, 96 S.Ct. at 1164 (emphasis in original).

In other words, infliction of a stigma to reputation accompanied by a failure to rehire (or, *a fortiori,* by a discharge) states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment. Moreover, this combination of stigma plus failure to rehire/discharge states a claim even if the failure to rehire or discharge of itself deprives the plaintiff of no property interest within the meaning of the Fourteenth Amendment. We reach this conclusion because on the facts of *Roth* itself the Supreme Court found that the plaintiff respondent had no claim of entitlement to, or property interest in his job. *Roth, supra,* 408 U.S. at 578, 92 S.Ct. 2701. Since the Court in *Paul v. Davis* specifically approved the *Roth* dictum concerning stigma to reputation, it follows that stigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found *in conjunction* state a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process.

The case at bar clearly involves a claim of stigma plus discharge. It cannot seriously be contended that the charges contained in the press releases did not gravely stigmatize the reputation of Colaizzi and Indovina. Cf. *Adams v. Walker,* 492 F.2d 1003, 1007–1008 (7th Cir. 1974). At the same time, the two men were discharged from their state positions, albeit positions in which they held no property interest within the meaning of the Fourteenth Amendment.

■ The district court also dismissed Count II, plaintiffs' pendent state law claim against Walker, Moore, and Staples, for defamation. The state and federal law claims arose from a common nucleus of operative fact, and there is sufficient substance in the federal claim so that the district court could take jurisdiction of the state law claim. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The district court deemed all three officials protected by absolute privilege. Since oral argument here, the Supreme Court of Illinois decided *Blair v. Walker,* 64 Ill.2d 1, 349 N.E.2d 385 (May 28, 1976), holding in a sufficiently similar case that in Illinois the Governor is protected by an absolute privilege. Appellants concede an absolute immunity of public officials in Illinois as to communications passing between public officials pertaining to their official duties. Anything alleged against Staples falls within such immunity. As to Moore, however, it is alleged that he repeated the charges in news conferences, thus going beyond inter-official communication. Moore was Director of the Office of Special Investigations. It does not clearly appear as a matter of law that he was so high an executive officer of the state or that public announcement by him, in addition to informing the Governor of his findings, was so clearly a matter of his official duty, that the doctrine of *Blair* would support absolute immunity. Further inquiry into the circumstances by the district court will be necessary to decide this question, as well as whether he acted in good faith if he had only a qualified privilege. We therefore affirm as to Walker and Staples, but must reverse as to Moore.

■ Count III of the complaint alleges a conspiracy among all defendants to make false charges for the purpose of removing plaintiffs from their state employment. This allegation of action by persons acting under color of law to carry out a purpose in which both state officials and private persons joined states a claim under 42 U.S.C. § 1983. See *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ The district court could properly entertain Count IV, the state law claims of defamation against defendants Scully, Maros, and Zenith, pendent to Count III. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

While we hold that the complaint states a § 1983 claim against defendants Walker, Moore and Staples, we do not mean to imply that a qualified good-faith immunity may not be available to them. See *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). If properly pleaded, the district court will have to resolve this issue.

Immunity aside, defendants may be able to establish the truth of the charges made.

On this appeal, defendants have asked us to take judicial notice of the findings made in hearings on plaintiffs' claims for unemployment compensation resulting from their discharge. The hearings referee denied benefits, finding that plaintiffs had each been guilty of misconduct in connection with the Zenith matter. These findings were made at about the same date as the earlier of the decisions of the district court, and were not put before it. Defendants argue that the hearings presented an opportunity to plaintiffs to clear their names; that plaintiffs are bound by the findings; and that the hearings afforded due process as in *Arnett v. Kennedy,* 416 U.S. 134, 157, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

Because these theories were not presented to nor inquired into in the district court,

we decline to determine the impact, if any, of the unemployment compensation hearings and the findings which resulted. On remand, defendants will have an opportunity to present this material and to urge that it be considered in the light of the issues posed by the pleadings.

The orders appealed from are reversed except that the dismissal of Count II as to defendants Walker and Staples is affirmed. The cause is remanded for proceedings consistent with this opinion.