Verle AUSTIN, Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF GEORGETOWN COMMUNITY UNIT SCHOOL DISTRICT NO. 3 OF VERMILION COUNTY, ILLINOIS, Joseph Dalida, Jack Harrold, James W. Bonebrake, Don Ehlenfeld, Elmo Snook, Carl Cunningham and Sarah R. Gleichman, Individually and as members of the Board of Education of Georgetown Community Unit School District No. 3 of Vermilion County, Illinois, Defendants-Appellees.

No. 77–1168.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1977.

Decided Sept. 21, 1977.

R. W. Deffenbaugh, Springfield, Ill., for plaintiff-appellant.

Wendell W. Wright, Danville, Ill., for defendants-appellees.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the judgment of the district court entered on December 23, 1976, granting the defendants' motion for summary judgment and dismissing the case with prejudice. The three issues on appeal are (1) whether the defendants' dismissal of Austin from his teaching position deprived him of his liberty without due process of law, (2) whether the failure of the defendants to consider Austin for employment for the 1976–77 school year deprived him of liberty without due process of law, and (3) whether the defendants' dismissal of Austin was in accordance with the provisions of Illinois Revised Statutes, 1975, ch. 122, § 24–11.

## I. Background

Verle Austin was first employed by Georgetown Community Unit School District No. 3 on January 28, 1975. Thereafter, he was re-employed by the school district by a written contract commencing on August 25, 1975, and ending on June 7, 1976.

On April 2, 1976, the Board of Education, at a special meeting, passed a resolution authorizing the termination of Austin's employment. On that same date, the Board sent Austin a notice of dismissal, stating that this dismissal would take effect on June 7, 1976, and giving as the basis of the dismissal the charge that he had taken indecent liberties with two or more female students in the classroom. The "NOTICE OF CHARGES AND DISMISSAL" stated that a

Bill of particulars or details of these charges will be provided if you request in

writing and a Hearing will be granted to you by the Board of Education if you so request it; at which Hearing you may be represented by legal counsel and hear the charges against you with the right to present any defense which you may have.

On April 6, 1976, Austin wrote to the President of the Board requesting a hearing on the charges stated in the April 2, 1976, notification and further requesting written notice of such charges and a bill of particulars to be served upon him at least twenty-one days before the scheduled hearing date in accordance with Illinois Revised Statutes, 1975, ch. 122, § 24–12. Three days later, Donald F. Strohl, Principal, Pine Crest School, transmitted to Austin a bill of particulars.[1] Austin had been suspended from his teaching duties as of April 2, 1976. If the charges of taking indecent liberties with two or more female students in the school had been sustained, his salary was to have ended as of April 20, 1976.

Attempts to set a date for a hearing were unsuccessful as of May 25, 1976. Thereafter, Derry L. Behm, Superintendent of the School District, and the Board of Education determined to proceed to pay Austin for his full contract period ending June 7, 1976. It was determined that a due process hearing was not necessary because the notice of dismissal, giving specific reasons and stating that dismissal would be effective at the end of the school term, had been sent by registered mail to Austin at least sixty days before the end of the school term.

On August 19, 1976, Austin filed suit in the district court. His complaint alleged, *inter alia*, that after providing him with the bill of particulars the defendant Board of Education refused to grant him a pretermination hearing on the charges included in the notice of dismissal and the bill of particulars. The complaint further alleged that the nature of the charges against Austin had become common knowledge among the students, faculty, administration, and community in which Austin worked and lived, that said charges had substantially damaged Austin's reputation in the community and had materially impaired his ability to find employment and to make a living and that said charges would continue in the future to damage his reputation and to impair his ability to make a living. The complaint charged a violation of Austin's civil rights by denying him property and liberty without due process of law, and prayed for reinstatement as a full-time teacher, an award of monetary damages, and such further relief as might be required.

In granting the defendants' motion for summary judgment and in dismissing the case with prejudice, the district court determined that there was no genuine issue as to any material fact and ruled that the defendants were entitled to judgment as a matter of law. The court's order rested in part upon a determination that an Illinois probationary teacher who receives notice of dismissal at least sixty days before the end of his or her probationary period is not entitled to enter upon contractual continued service. The court's unreported opinion explained that Austin had received his salary for the entire 1975–76 school term and had suffered no diminution thereof. Finally, the court determined that there was no provision of Illinois law which would entitle Austin to the requested administrative hearing under the circumstances of this case.

## II. The Merits

### A. The Dismissal as Deprivation of Protected Liberty Interest

■ The resolution of the first issue in this case is controlled by *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Bishop v. Wood*, 426 U.S. 341, 96

---

1. The three-paragraph bill of particulars stated in substance that Austin on one or more occasions during the 1975–76 school year had touched three specifically identified female students "in the breast and buttocks area." The alleged touching as to all three was on the outside of the clothing with the additional charge as to one of the students that the touching also was "underneath her clothing, including underpants when wearing a dress" specifying that "the latest instance being before noon on March 31st."

S.Ct. 2047, 48 L.Ed.2d 684 (1976); and *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976), *cert. denied*, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977).

In *Codd*, a terminated police officer sought reinstatement and damages for the injury to his reputation and future employment prospects. His personnel file contained a report of an apparent suicide attempt when he was a trainee. The respondent's amended complaint did nòt seek a delayed hearing under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Moreover, the litigation proceeded to a bench trial, thus going beyond the pleading stage, without any affirmative assertion by the respondent that the report of the apparent suicide attempt was substantially false. Expressly refusing to rest decision upon an overly technical application of the rules of pleading, the per curiam *Codd* opinion stated that the absence of any allegation or court finding that the report was substantially false was fatal to Velger's claim under the Due Process Clause that he should have been given a hearing. 429 U.S. at 624, 97 S.Ct. 882. The *Codd* decision recognizes that the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear his name and that such a hearing is required only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination. *Id.* at 627, 97 S.Ct. 882.

Because the procedural history in *Codd* reflected the lack of any allegation of the falsity of the report, the Court found it unnecessary to reach the issue of its stigmatizing nature or whether the circumstances of its apparent dissemination were such as to fall within the language of *Roth* and *Bishop, supra*. 429 U.S. at 624, 97 S.Ct. 882. Simply stated, the record in *Codd* did not raise an issue about the substantial accuracy of the report. Even if the Supreme Court had accepted the determination of the Second Circuit that the creation and disclosure of the file report amounted to stigmatization, which it found it unnecessary to do formally, the Court was able to rule that Velger had not made out a claim under the Fourteenth Amendment that he had been harmed by the denial of a hearing. *Id.* at 627, 97 S.Ct. 882.

Our present case is both similar to and different from the *Codd* case. Here, as there, the complaint does not allege that the charges upon which the dismissal was based are substantially false. Under *Codd*, the complaint as drafted must be viewed as insufficient to state a deprivation of liberty under the Fourteenth Amendment. However, the present case never reached the advanced stages of discovery and trial. Had the district court anticipated the ruling of *Codd* and dismissed the complaint as insufficient for want of an allegation of falsity, the plaintiff Austin would have had under Rule 15(a) as construed by this court the absolute right to file an amended complaint averring the falsity of the female molestation charges. *See Fuhrer v. Fuhrer*, 292 F.2d 140, 142 (7th Cir. 1961). Moreover, plaintiff-appellant Austin's continuing attempt to secure a delayed *Roth* hearing not only makes the present case procedurally dissimilar from *Codd*[2] but can be viewed as an implied assertion that the charges are substantially false. Assuming that the grant of summary judgment was otherwise improper, Austin should be allowed to amend his complaint by including the indispensable "falsity" allegation.

In *Bishop, supra*, 426 U.S. at 348, 96 S.Ct. 2047, the Court concluded that a discharged employee was not deprived of "liberty" under the Due Process Clause of the Fourteenth Amendment where there was no public disclosure of the reasons for the discharge. On this appeal, the defendants contend that *Bishop* effectively controls the present case, asserting that there is nothing

2. In *Codd, supra*, 429 U.S. at 625, 97 S.Ct. at 883, n.1, the Court stated:

Respondent's amended complaint did not seek a delayed *Roth* hearing to be conducted

by his former employer at which he would have the opportunity to refute the charge in question.

in the record showing that the Board of Education published its reason for dismissing Austin. The short answer to the contention is that there is a factual dispute about the disclosure to the community of the charges. Although the very specific bill of particulars was communicated only to plaintiff-appellant Austin, the formal resolution of dismissal of the same date incorporated by reference an Exhibit 1, not part of the record on appeal, which set forth the reasons for Austin's dismissal. If the resolution and the incorporated Exhibit 1 were made available to the public, the defendants' *Bishop* argument must certainly fail.

The defendants steadfastly insist that the Board and its agents have told only Austin, not others, of the reasons for his discharge. The plaintiff insists that the nature of the charges has become common knowledge but has not formally alleged a public dissemination. Examination of the record satisfies us that the important question of public dissemination remains in dispute. This factual question is, under *Bishop*, clearly material. It is not our function, nor was it that of the district court in ruling on a summary judgment motion, to resolve this disputed matter. The district court never considered the matter because it did not reach the issue of a deprivation of a "liberty" interest. If the charges are properly characterized as being of a stigmatizing nature, the court's grant of summary judgment must fall because of the presence of an unresolved issue of material fact.

We do note the divergent approaches to the question adopted by the parties. An affidavit by the defendant's superintendent asserts that the resolution was adopted at a *special* Board meeting. Nowhere in the affidavit is there an averment that the meeting was closed to the public, and the defendants' brief refers to the fact that the Board of Education listed the reasons as required by statute. The plaintiff asserted at oral argument that under the Open Meeting law of Illinois, official action must be taken in an open meeting. But nothing in the record casts any light on what actually occurred at the Board meeting of April 2, 1976. The text of the Board resolution states that it was *read* by the Board's Secretary. But the resolution text, by itself, does not resolve the question whether Exhibit 1, which was formally incorporated into the resolution, was or was not read.

On the record before us, we conclude that the district court erred in granting the defendants' motion for summary judgment. However, that conclusion does not fully dispose of the case. The district court's order dismissing the case with prejudice could be sustainable on the ground that public charges that a teacher has sexually molested female pupils are not of a stigmatizing nature. We turn now to that question.

In *Colaizzi, supra,* 542 F.2d at 973, this court stated that infliction of a stigma to reputation accompanied by a failure to rehire or, *a fortiori,* by a discharge states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment. We also recognized that the combination of stigma plus failure to rehire or affirmatively to discharge states a claim even if the failure to rehire or discharging of itself deprives the plaintiff of no property interest within the meaning of the Fourteenth Amendment. *Id.* Thus, we explained:

> [S]tigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found *in conjunction* state a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process.

*Id.* [Emphasis in original.]

We have no difficulty in the present case in finding the conjunction of discharge and stigma. The Board resolution and the "NOTICE OF CHARGES AND DISMISSAL" established beyond cavil the undisputed fact of discharge. We entertain no doubt about the stigmatizing nature of the charge that a teacher has taken indecent liberties with female students in the classroom. It cannot seriously be contended that such a charge

does not gravely stigmatize the reputation of Austin, particularly as a teacher of young people. *See Colaizzi, supra* at 974. *Cf. Adams v. Walker,* 492 F.2d 1003, 1007–08 (7th Cir. 1974). Accordingly, we must reverse and remand.

If upon remand Austin declines to amend the original complaint so as to allege formally the falsity of the charges, the district court should enter a judgment dismissing the action with prejudice. If Austin does file an amended complaint alleging falsity, the district court should then turn to matters relevant to the *Bishop* question of private or public disclosure.

### B. The Failure to Rehire as Deprivation of Protected Liberty Interest

■ Plaintiff-appellant Austin also argues that the *improper dismissal in violation of the doctrine of Roth* necessarily leads to the conclusion that he was not properly considered for employment for the ensuing school term. Contrary to the approach usually taken, which predicates the claim upon the theory that the terminated employee has been deprived of a "property" interest, the appellant contends that the defendants' failure to consider him for employment for the 1976–77 school year deprived him of a "liberty" interest without due process. This formulation of the argument brings into issue several questions of Illinois law. Thus, Austin observes that the statutes of Illinois do not provide for a hearing upon the failure of the Board of Education to renew a nontenured teacher's contract. Further, Austin notes that since October 1, 1975, the boards of education in Illinois have lost power to hear cases of dismissal of tenured teachers, such power now being vested in an independent hearing officer whose administrative decision is reviewable by the circuit court. Ill.Rev.Stat. 1975, ch. 122, § 24–12. Austin thus submits that this case should be remanded with instructions to give him an opportunity to vindicate himself in a hearing before the district court.

We think it premature to formulate instructions for the district court regarding this second issue. First, it is unclear whether or not a *Roth* hearing will be required. As noted, the falsity of the charges has not yet been placed in issue. Even were we to assume that Austin will amend his original complaint, the factual question regarding public or private disclosure has not yet been resolved. Thus, the district court may never have to determine the questions of Illinois law relevant to the charge that boards of education are without power to conduct hearings on charges preferred against teachers who are dismissed. Finally, there remains doubt whether the rule of *Colaizzi* reaches so far as the appellant's request for a court hearing suggests.

In *Moore v. Knowles,* 482 F.2d 1069 (5th Cir. 1973), the court faced a situation where a school board had failed to renew the contract of a male teacher who had been indicted on charges arising out of sexual misconduct with female students. After indicating that the board might be required under defined circumstances to offer a *Roth* hearing to the teacher, the court concluded that the board "would not, by conducting such a hearing, be bound to re-employ Moore and it would not be liable for back pay." *Id.* at 1074. In that case, of course, the board had not itself leveled the charges of sexual misconduct against the teacher. Had that been the case, or had the board relied only upon the charges by the female students, the teacher would certainly have been entitled to a *Roth* hearing. *Id.* at 1073.

Here, the Board of Education has itself leveled the charges of sexual misconduct against Austin. Assuming that his exclusion from the classroom without a hearing was proper under *Moore,* there remains the question whether the failure to rehire was under *Colaizzi* such a deprivation of a liberty interest as to authorize a federal court to order reinstatement and back pay assuming that Austin is a competent teacher. We think that this question cannot be answered until factual findings of an adjudicative tribunal have been made.

Administrative or judicial factfinding will provide a necessary framework in

which Austin's claim for reinstatement and back pay can be properly considered. Thus, if a fair hearing determines that Austin did not sexually molest the named students, the real harm done to him by the improper dismissal and the failure to rehire will emerge in a clearer perspective. If Austin successfully refutes the molestation charges, the trier of fact can reasonably determine that he has been the innocent victim of false accusations fabricated by a trio of adolescent girls. Should that be the ultimate finding of a fair hearing, the grievous consequences of the Board's refusal to grant a pretermination hearing are readily apparent. Conversely, if a fair hearing eventuates in a finding that the charges have been proven, the Board's failure to rehire Austin for 1976–77 appears under an entirely different light. Under that posture of the case, Austin's claimed deprivation of a protected "liberty" interest rings hollow indeed. As noted in *Bishop, supra*, 426 U.S. at 349 n.14, 96 S.Ct. 2047, the instances in which the federal judiciary has required a state agency to reinstate a discharged employee for failure to provide a pretermination hearing are extremely rare. We find nothing in the cases which authorizes a federal court to order the reinstatement of a proven child molester. Nor is this court inclined to extend the reach of *Colaizzi* by so ruling.

Accordingly, we conclude that the issue of an alleged deprivation of a liberty interest by virtue of the Board's failure to rehire Austin in 1976–77 is not ripe for adjudication. Because the case is not in a posture wherein we can say with certainty that there will or will not be a hearing, we similarly find it unnecessary to pass upon the plaintiff-appellant's contention that the abolition of the power of the boards of education in Illinois to conduct hearings on charges brought against tenured teachers deprives this particular Board of Education of power to conduct an administrative hearing regarding the instant charges. Should the district court eventually rule that a delayed *Roth* hearing is required under the authority of *Roth, Moore,* and *Colaizzi,* it can then examine the policy reasons sup-

portive of the argument that such a hearing should be conducted by an impartial hearing officer chosen by the State Board of Education. *See* Ill.Rev.Stat.1975, ch. 122, § 24–12. We find no persuasive reason why this court should determine now whether or not the enactment of an independent hearing officer law incapacitates Illinois boards of education from conducting administrative hearings bearing on charges of sexual misconduct.

### C. Compliance with the Illinois School Code as Complete Defense

■ The defendant argues that the pleadings, including the affidavit submitted therewith, clearly establish that all of the requisites of Ill.Rev.Stat. 1975, ch. 122, § 24–11 were fulfilled. The defendants further argue that there was no constitutional deprivation of a property right in Austin's contract, inasmuch as he was paid for the full term of his probationary contract and suffered no diminution thereof. Were it not for the fact that the district court appears to have rested its decisions upon acceptance of the arguments, there would be little point in addressing them.

In *Miller v. School District Number 167, Cook County, Illinois,* 500 F.2d 711 (7th Cir. 1974), this court expressed the view that the Illinois state courts would interpret ch. 122, § 24–11 as empowering a school board to terminate a non-tenured teacher for any reason at all. We were persuaded that as a matter of state law, the non-tenured teacher's claim of entitlement to his position is insufficient to constitute a property interest within the meaning of the Fourteenth Amendment.

In view of the manner in which the issues in this case have been framed, *Miller* is manifestly inapposite. We can readily agree that the failure to rehire Austin does not deprive him of a property interest. Such a conclusion is fundamentally irrelevant in this case, for Austin presses an argument directed at his "liberty" interest. The language of *Colaizzi,* which we have hereinbefore quoted, directly controls upon that issue.

Acceptance of the argument that strict compliance with ch. 122, § 24–11 requires judgment in favor of the defendants as a matter of law would completely devitalize *Roth* and *Colaizzi.* The Supremacy Clause of the Constitution will not countenance such a result. Thus, even were this court to assume strict and literal compliance with the appropriate section of the School Code, the district court's ground of decision could not be supported. The Board's alleged compliance with § 24–11 is totally irrelevant to Austin's federal constitutional right.

Moreover, the pleadings and the affidavit fail to provide a completely solid basis for assuming that the Board has fulfilled the exact dictates of § 24–11. The language of the statute provides that "any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or removals," *i. e.,* the procedures set forth in § 24–12. The affidavit of Superintendent Behm is susceptible of a reading that Austin was not paid his regular salary check from April 20, 1976, until some time after May 25, 1976. The nonpayment of a teacher's salary for some thirty-five days can arguably be classified as a reduction activating the protections of notice and hearing under the statutory language itself. We need not consider that possibility in light of our conclusions regarding Austin's constitutional claims.

For the reasons hereinbefore stated, the district court's judgment is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.