7. Plaintiffs will be awarded their costs in this action. *Smith v. Anchor Building, supra.*

 8. Plaintiffs have requested $5,810 in attorney's fees under 42 U.S.C. § 1988 for 97 hours of work. The Court is of the opinion that $1,000 in attorney's fees is adequate for a six hour trial and the discovery and briefing for such a trial. Accordingly, $1,000 in attorney's fees for plaintiffs' attorneys will be awarded.

Peter M. **FIELDER**

v.

**CITY OF RICHMOND** et al.

**Civ. A. No. 78–0896–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

March 30, 1979.

William J. Doran, III, Richmond, Va., Robert P. Geary, Richmond, Va., for plaintiff.

James R. Saul, Asst. City Atty., Richmond, Va., for defendants.

### MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Peter M. Fiedler, brings this civil action under 42 U.S.C. § 1983 seeking monetary, declarative, and injunctive relief from the City of Richmond and two officials thereof. Jurisdiction lies under 28 U.S.C. § 1343(3). The basis for plaintiff's suit is his allegation that defendants' refusal to rehire him as a police officer constitut-

ed a deprivation of his rights secured to him by the Fourteenth Amendment to the Constitution.

Plaintiff is a citizen of the United States residing in the Richmond, Virginia, area. Defendant City of Richmond is a municipal corporation organized and existing under the laws of the Commonwealth of Virginia. Defendant Jack M. Fulton is the Director of the Department of Public Safety for the City of Richmond. Defendant Frank S. Duling is Chief of the Bureau of Police of the City of Richmond. Plaintiff sues defendants Fulton and Duling in both their official and individual capacities. At all times relevant to this lawsuit, defendants Fulton and Duling were acting under color of state law. Defendants have moved for summary judgment; plaintiff has responded, and the matter is thus ripe for disposition.

The undisputed material facts are as follows. From on or about October 29, 1974 until on or about August 31, 1976, plaintiff was employed as a police officer with the Richmond Bureau of Police [hereinafter "the Bureau"]. He resigned on or about August 31, 1976 for personal reasons following the death of his mother. In January, 1977, plaintiff reapplied to the Bureau for a position as a police officer. At that time, plaintiff was required to fill out certain questionnaires. The process of updating plaintiff's file with the Bureau raised the suspicions of various Bureau personnel regarding the accuracy of certain of plaintiff's responses.

Plaintiff's complaint, as well as his affidavit filed with his response to defendants' motion for summary judgment, reveals the following uncontested facts with respect not only to plaintiff's reapplication of January, 1977, but also with respect to his original application in May, 1974. In a question-naire entitled "Initial Interview of Applicant," dated January 17, 1977, in response to question # 9, asking if plaintiff had ever made application for employment with any other police agency, plaintiff responded in the negative. It is uncontested, however, that on November 15, 1976 plaintiff applied for a position with the Henrico County Police Department.[1]

The above inaccurate response prompted a review of plaintiff's original application to the Bureau. This review revealed that, on plaintiff's original questionnaire dated May 14, 1974, plaintiff responded in the negative to the following question (# 15): "Have you ever been a patient in a mental institution or had any treatment by a psychiatrist? _____ If yes, explain." In his affidavit and complaint, plaintiff conceded that he had been an out-patient at the Alexandria Community Mental Health and Hygiene Clinic prior to his application for a position with the Bureau. Yet he explained that he neither considered himself a "patient" nor thought of the Alexandria Clinic as a "mental institution." The Court finds itself hardpressed to rely on this tortured explanation. An out-patient, like an in-patient, is a patient. Furthermore, in the "Supplemental Questionnaire to Application," also dated May 14, 1974, plaintiff gave several additional inaccurate responses. Consistent with his answer to question # 15 in his initial application, and therefore also incorrect, plaintiff, in response to questions number 23, 49, and 52, indicated that neither he nor any member of his family had "ever been treated or examined for a mental disorder," nor had he "ever suffered from any nervous condition," nor had he "ever been under psychiatric treatment." Question # 32 asked whether plaintiff had "ever made applica-

---

1. The record reflects several other applications made by plaintiff to various police departments in the State of Virginia. Apparently, however, only his application to the Henrico Police Department was subsequent to his resignation from the Richmond Bureau. Because at this stage of the proceedings the Court must accept plaintiff's assertion that he thought the January 17, 1977 questionnaire to be only for the pur-pose of updating his Bureau file, the Court cannot consider plaintiff's failure to list any applications made prior to his resignation as material omissions. Nonetheless, plaintiff fails to explain his failure to mention his November 15, 1976 application to Henrico. This omission, even under plaintiff's interpretation of the purpose of the January 17, 1977 questionnaire, is clearly material.

tion for employment with any other police agency." Plaintiff responded that he had, but listed only the Washington, D. C. Police Department. In his affidavit, however, plaintiff admitted that in 1966 he had applied for a position with the Fairfax County Police Department, in 1967 he had applied for a position with the Alexandria Police Department, and in 1968 he had applied for a position with the Arlington County Police Department. Plaintiff's explanation that the omissions resulted from his opinion that these applications were not "significant in terms of [his] status in 1974" cannot alter the fact that his responses were factually inaccurate.

Apparently as a result of defendants' discovery of the foregoing misstatements by plaintiff, plaintiff was requested to fill out another "Supplemental Questionnaire" on January 25, 1977. Before filling out this questionnaire, plaintiff requested that he be afforded access to his previous questionnaires. This request was denied. As a result of this denial, plaintiff claims that the following misstatements in this most recent questionnaire resulted from a lapse of memory rather than an intent to deceive. Questions number 23, 49, and 52 were essentially identical to those questions bearing the same numbers from the Supplemental Questionnaire that plaintiff filled out in May, 1974. Once again plaintiff answered these questions in the negative.

After what the record reveals to have been a rather intensive investigation of plaintiff's reapplication by defendants, defendant Fulton wrote plaintiff on May 20, 1977 informing him that he would not be rehired by the Bureau. Plaintiff then pursued, without success, his administrative remedies with the Richmond Commission on Human Relations. The Commission conducted an investigation of the situation and,

on July 21, 1977, informed plaintiff that the defendants had "acted in accord with the [applicable] guidelines" that govern personnel decisions of the Bureau. Shortly thereafter, plaintiff retained counsel, and this action ensued.

The sole question presented for resolution is whether defendants' action constituted a deprivation of plaintiff's right to procedural due process in contravention of the Fourteenth Amendment. More specifically, was plaintiff denied any liberty or property interest without due process?[2]

As a preliminary matter, plaintiff asserts that material facts are in dispute, and that summary judgment therefore would be inappropriate. In plaintiff's memorandum submitted in response to defendants' motion for summary judgment, he attempts to show that credibility is in issue, when in fact it is not. Although defendants agree with plaintiff that their refusal to rehire him was based on the belief that he intentionally responded incorrectly in the manner described above, plaintiff's intent is not relevant to this inquiry. The material fact, as far as the Court's consideration is concerned, is that plaintiff did indeed respond incorrectly to several of the questions put to him by defendants or their agents in both 1974 and 1977.

Plaintiff also asserts that the defendants acted in bad faith. Beyond plaintiff's unsupported allegation of bad faith by the defendants, the record reflects no material evidence that would raise even the slightest inference of bad faith. Furthermore, plaintiff directs the Court's attention to the favorable evaluations by several of his superiors regarding plaintiff's performance while he was with the Bureau. While these evaluations may be relevant to the correctness of defendants' decision not to rehire plaintiff, they are absolutely irrelevant to the

---

**2.** The record reflects various references made by both plaintiff and defendants regarding defendants' faithfulness to the dictates of the Bureau's own procedures and guidelines for handling applications such as plaintiff's. Had defendants failed to follow their own rules, regardless of their compliance with what might otherwise have been required by the Four-

teenth Amendment, a cause of action would lie. The state may not establish procedures and then arbitrarily deviate therefrom. Here, however, there is no evidence, other than plaintiff's unsupported, conclusory allegations, that defendants did not comply with their own guidelines.

inquiry as to whether defendants denied plaintiff procedural due process.

■ The sole legal issue, therefore, appears to be whether defendants' action deprived plaintiff of any constitutionally protected liberty interest. Plaintiff evidently does not claim any property deprivation. Had he done so, however, such claim would be unavailing. Plaintiff was not a tenured or nonprobationary public employee with a legitimate expectation in continued employment. *Cf. Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Plaintiff was a former policeman seeking reemployment, and as such, he enjoyed no constitutional right to public employment.

■ With respect to the alleged liberty deprivation, plaintiff argues strenuously that this case is not controlled by the Supreme Court decision in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Instead, plaintiff urges that the Court look to three cases that plaintiff identifies as being supportive of the "stigma-plus" doctrine. *See McGhee v. Draper,* 564 F.2d 902, 910 (10th Cir. 1977); *Moore v. Otero,* 557 F.2d 435, 438 (5th Cir. 1977); *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir. 1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). Plaintiff relies especially on language from the Seventh Circuit's decision in *Colaizzi,* where, in a discussion of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the court identified the "stigma-plus" analysis thus:

> [I]nfliction of a stigma to reputation accompanied by a failure to rehire (or, *a fortiori,* by a discharge) states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment.

542 F.2d at 973.

Plaintiff's reliance is misplaced. The words "failure to rehire" are, in the above context, functionally equivalent to "discharge." In *Roth,* the plaintiff was a non-tenured professor whose contract was not renewed. 408 U.S. at 566, 92 S.Ct. 2701. The Board of Regents' "failure to rehire"

Mr. Roth was therefore very different from the instant defendants' "failure to rehire" Mr. Fiedler.

Moreover, even assuming that the above analysis is overly restrictive, plaintiff here has failed to demonstrate how he has been stigmatized. That is, absent some publication by defendants of their reasons for rejecting plaintiff, neither plaintiff's reputation in the community nor his ability to pursue other employment has been compromised. *See Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam) ("Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is . . . a hearing required.") Plaintiff's unsupported and conclusory allegation in his affidavit that defendants have "irremediably damaged [his] reputation . . . [and have] prevented [his] securing police work in other jurisdictions" falls far short of the specificity required by Rule 56, Federal Rules of Civil Procedure.

■ A casual reading of the three "stigma-plus" cases cited by plaintiff reveals another critical distinction between these cases and the case at bar. While the plaintiffs in the above-cited cases contested the material accuracy of the reasons for their respective discharges, or as in *Moore,* the plaintiff's transfer, the instant plaintiff, as the Court has noted, concedes that he offered numerous incorrect responses to the employment questionnaires. *See Codd v. Velger, supra,* at 626–27, 97 S.Ct. at 882. Because Fiedler does not argue that his answers were accurate, he asks the Court to adopt a rule requiring a due process hearing be held to evaluate his subjective intent.

Such a rule would not only be unduly intrusive into the personnel decisionmaking processes of the public sector; it would also be a novel and unjustified departure from clear Supreme Court precedent in the area of procedural due process. Indeed, the bottom line in this case was stated by the Supreme Court in *Bishop v. Wood, supra,* 426 U.S. at 349–50, 96 S.Ct. at 2080, where

the Court was reviewing the constitutionality of a police officer's discharge by the District of Columbia Police Department.

The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

An appropriate order shall issue.