630 F.2d 509
 Donald G. ELBERT, Plaintiff-Appellant,
v.
The BOARD OF EDUCATION OF LANARK COMMUNITY UNIT SCHOOL
DISTRICT # 305, CARROLL COUNTY, ILLINOIS, Dennis
Sturtevant, Vernon Voss, Mary
Holesinger, and Bettye Zier,
Defendants-Appellees.
 No. 79-1310.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 31, 1980.
Decided Sept. 10, 1980.
 
 Elmer Gertz, Chicago, Ill., for plaintiff-appellant.
 Lorence H. Slutzky, Chicago, Ill., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and BAKER, District Judge.*
 FAIRCHILD, Chief Judge.
 
 
 1
 The narrow question presented by this appeal is whether a public employee can maintain an action under 42 U.S.C. § 1983 or § 1985(3) when his termination is announced, and presumably defamatory statements are made about him, but retractions are made and he is "rehired" before the effective date of the termination. We agree with the district court that on these facts no claim for infringement of a liberty or property interest can be made out, and thus affirm the judgment appealed from.
 
 I.
 
 2
 In the winter of 1976 the plaintiff, Donald Elbert, was superintendent of schools for the Lanark Community School District. Although he was employed under a two-year contract which, on its face, would expire in June of that year, there seems to be no dispute that by force of Illinois law he was entitled to a third year as superintendent.[1] On March 8, 1976, however, the school board, by a four to three vote, decided not to renew the superintendent's contract for the 1976-77 school year. On March 9, Elbert was formally notified of that vote. The school board reaffirmed its decision at a public meeting held on March 23, 1976, and for the first time stated reasons for the termination, which included "misuse of public funds." On April 6 several of the board members (defendants Voss, Holesinger, and Zier) met and prepared a "bill of particulars" which described in more detail the alleged misuse of public funds. The individual defendants gave this document to the local newspaper where it was printed on April 8. Although the plaintiff several times during this period requested a hearing so that he could rebut the charges against him, none was ever scheduled.
 
 
 3
 On April 10, 1976 a school board election was held at which three new board members were elected. Two of the board members who had opposed Elbert were defeated in that election. The new board met in a series of executive sessions, and the plaintiff was given the opportunity to meet with the three new board members May 3, 1976. On May 10, 1976, the board voted to offer the plaintiff a contract for the upcoming school year. At the same time a public statement was issued saying that although "some errors of judgment were made by Mr. Elbert ... at no time did Mr. Elbert misuse public funds." The plaintiff, whose attempts to find employment elsewhere had been unsuccessful, signed the contract and served as superintendent of the district until his resignation in June, 1978.
 
 
 4
 As finally ruled upon by the district court, the plaintiff's complaint against the school board and four of its members contained three counts. Count I alleged that the events described above constituted a deprivation of liberty and property without due process of law, in violation of 42 U.S.C. § 1983. Count II charged the defendants with conspiracy to deprive the plaintiff of the equal protection of the laws, in violation of § 1985(3). Count III alleged that in retaliation for filing this suit the defendant board unlawfully denied Elbert a raise to which he otherwise would have been entitled. The district court judge dismissed Counts I and II, stating that, since Elbert remained in the continuous employment of the board, there was no loss of property rights and that the allegation of loss of liberty rights did not meet the "stigma plus" test of our decision in Colaizzi v. Walker, 542 F.2d 969 (7th Cir. 1976) cert. denied, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). The defendants' request for summary judgment on Count III was denied, however, and that action remains pending in the district court. Following the procedure established by Fed.R.Civ.P. Rule 54(b), the district court judge entered judgment for the defendants on Counts I and II. This appeal followed.
 
 II.
 
 5
 Had the school board not reconsidered its earlier decision to terminate the superintendent, and had he indeed left the district, we have little doubt that a claim could have been stated under § 1983. Taking the facts pleaded as true (and there does not seem to be any real dispute that the ones presented here are true), the state law setting forth the tenure of school superintendents gave Elbert a claim of entitlement to employment for the 1976-77 school year and thus a property interest in that job. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). When the board voted to deny Elbert employment for that school year without providing even the rudiments of a hearing, and had that vote not been reconsidered, the superintendent would have been deprived of a property interest without due process of law, and the complaint would clearly state a § 1983 cause of action. With the addition of the charge by the board that the superintendent was being terminated for misuse of public funds (and the allegation by the plaintiff that that charge was baseless and maliciously made) a claim of a deprivation of liberty rights without due process also could have been stated. Colaizzi v. Walker, 542 F.2d 969 (7th Cir. 1976).
 
 
 6
 Similarly it appears that had the board accused Elbert of misusing public funds, but had not taken steps to terminate his employment (although such a scenario is a bit difficult to imagine), there would be no actionable claim for an unlawful deprivation of a liberty interest. Defamatory publications by a state official, however seriously they may harm someone, do not deprive that person of any liberty interests protected by the due process clause. Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976).
 
 
 7
 Our case is neither of these. Here the school board in March took the action which it thought would effectively terminate Elbert's employment, but in May, before that termination became effective, reconsidered its decision and offered to renew the contract. Things said in connection with the March events quite possibly would have amounted to an infringement of a liberty interest without due process, but only if they were "accompanied" by a failure to rehire. Colaizzi v. Walker, 542 F.2d 969, 973 (7th Cir. 1976). The defendants insist that the actions of May are the important ones-that as long as the superintendent in fact kept his job there was no deprivation of a liberty or property interest. Elbert instead would have us focus on the events of March and early April and hold that since the board's actions were complete at that time a claim for infringement of liberty and property rights could be stated. Under that theory the events of May might serve to mitigate any damage award to which he would otherwise be entitled, but would not undo his entire cause of action.
 
 III.
 
 8
 We have no difficulty in concluding that the complaint failed to state a cause of action under § 1983 for deprivation of a constitutionally protected property right. State law gave Elbert a right to be employed as superintendent of the Lanark District for the 1976-77 school year. Elbert was employed by the district for that school year. While there was a time between March and May of 1976 when the board intended not to renew the superintendent's contract, the contract was renewed, and no break in employment ever occurred. Under these circumstances we cannot see how any property right was infringed.
 
 
 9
 The question of whether a liberty interest was infringed without due process is far more difficult. The test of whether a liberty interest has been infringed in an employment context has been stated as follows:
 
 
 10
 "(S)tigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving a deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found in conjunction state a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process. Colaizzi v. Walker, 542 F.2d 969, 973 (7th Cir. 1976) (Emphasis in the original).
 
 
 11
 The Colaizzi "stigma plus" test was derived directly from Paul v. Davis. Both parties rely heavily on that opinion and indeed both cite language from it which, taken literally, seems to support their claims. In Paul v. Davis the Court discussed, and seemed to reaffirm, its earlier decision in Board of Regents v. Roth, which had stated that the failure to rehire a non-tenured teacher would be actionable under § 1983 if the state "in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1973), quoted in Paul v. Davis, 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). The Court went on to say
 
 
 12
 Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment. Certainly there is no suggestion in Roth to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.
 
 
 13
 Paul v. Davis, 424 U.S. 693, 709, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976).
 
 
 14
 The plaintiff here asserts that he was not merely defamed, but that he was defamed "in the course of" a refusal to rehire. His position is that the defamation and failure to rehire were completed acts by April 8, 1976 (the date of the newspaper article), at the latest. The subsequent decision by the board to reconsider its decision, with its accompanying public retraction of the charge that public funds had been misused, did not "undo" the infringement of his liberty interests which had already occurred any more than a retraction "undoes" a state tort claim for defamation. The defendants on the other hand (and, for that matter, the district court) rely on the language stating no hearing is required every time the State might be considered responsible for defaming an employee "who continues to be an employee." Since Superintendent Elbert's contract was renewed, and renewed before the prior one had expired, any defamation was of an employee "who continued to be an employee" and thus was not actionable under § 1983.
 
 
 15
 We tend to agree that the answer to the question presented can be found in Paul v. Davis, but we do not believe it is as obvious as either party suggests. We look instead at the policy considerations outlined in that opinion and at the application of those considerations to this case.
 
 
 16
 If Paul v. Davis can be said to have a central theme, it is a reaffirmation of the principle that § 1983 is not, and should not become, a general federal tort law. In Part I-A of the opinion the Court makes it clear that not every "legally cognizable injury which may have been inflicted by a state official acting 'under color of law' (establishes) a violation of the Fourteenth Amendment." 424 U.S. 699, 96 S.Ct. 1159. In Part I-B the Court goes on to state that defamatory statements by public officials are no exception to the rule of Part A, regardless of how stigmatizing they may be. "The words 'liberty' and 'property' as used in the Fourteenth Amendment do not single out reputation as a candidate for special protection over and above other interests that may be protected by state law." 424 U.S. 701, 96 S.Ct. 1161. In discussing the cases which had held that liberty interests could sometimes be implicated by state (or federal) action which stigmatized an individual, the Court was careful to note that in each case there had been an actual loss of a state-granted right (e. g., the right to drink in Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) or the right to attend public schools in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) or an actual loss of present or future government employment (Cafeteria Workers v. McElroy, 367 U.S. 866, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).
 
 
 17
 In the case before us, of course, there was no actual loss of employment. While the school board's attempt to sever its relationship with Elbert may have appeared to be technically complete at the time it sent the superintendent its "notice of intention not to renew" that action was reconsidered and reversed before it was ever expected to become effective. We think it would be an unduly technical reading of Paul v. Davis to conclude that, as long as the defamation was accompanied by an official decision to terminate the plaintiff, a claim for a loss of a liberty interest could be made out, even though in fact no loss of employment ever occurred. When all was said and done, the injury Elbert suffered was not tangibly greater than the injury he would have suffered from the defamation alone. After Paul v. Davis it is clear that redress for those injuries, if any, is to be sought under state, rather than federal, law. The events here more closely resemble the ordinarily unreviewable "multitude of personnel decisions that are made daily by public agencies" (Bishop v. Wood, 426 U.S. 341, 349, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976)) than they resemble the serious loss of future rights or opportunities which have characterized the decisions in which a deprivation of liberty interests has been found. We therefore agree with the district court's decision to dismiss Count I of the plaintiff's complaint.
 
 IV.
 
 18
 Count II of the complaint charged that the defendants conspired to violate the plaintiff's right to equal protection of the laws, in violation of 42 U.S.C. § 1985(3). The district court dismissed Count II on the grounds that the complaint failed to state a claim for any deprivation of any constitutionally protected right. Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 n. 2 (7th Cir. 1975). We also note that nowhere in his complaint does the plaintiff allege that the action taken against him was the result of any racial, or otherwise class-based invidiously discriminatory purpose. Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). We therefore agree that Count II was also properly dismissed.
 
 
 19
 For the foregoing reasons, the judgment appealed from is affirmed.
 
 
 20
 BAKER, District Judge (dissenting).
 
 
 21
 I respectfully dissent on the ground that the plaintiff has stated a valid claim under the Fourteenth Amendment for the deprivation of a liberty interest without due process of law.
 
 
 22
 I concur that there was no deprivation of a property right because the defendants never took away the title, the compensation, or the powers of the position in which the plaintiff had the right of property. It was his liberty that was taken from him the right to be free from stigma imposed by governmental action in the course of terminating employment.
 
 
 23
 Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and Colaizzi v. Walker, 542 F.2d 969 (7th Cir. 1976) read together show that the harm from which constitutional protection is given is, as stated in Paul v. Davis, "governmental action defaming an individual in the course of declining to rehire him . . . ." 424 U.S. at 709, 96 S.Ct. at 1164 (emphasis added). It is the combination of the State's actions in defaming the employee and then announcing to the world that because of his conduct the employee's services are terminated that creates the "stigma . . . that foreclosed his freedom to take advantage of other employment opportunities." Board of Regents v. Roth, 408 U.S. at 573, 92 S.Ct. at 2707, quoted in Paul v. Davis, 424 U.S. at 710, 96 S.Ct. at 1164.
 
 
 24
 "Stigma plus" is here. When the defendants charged the plaintiff with official misconduct, they stigmatized him. When they publicly announced that his contract was terminated and thereby injured his opportunity to gain employment elsewhere, they took his liberty, and they did it without due process of law. The circumstance that 48 days later a new board of education relented and reinstated him might work in mitigation of the plaintiff's damages, but it did not wash away the fact that the plaintiff had been deprived of his liberty. Acts in mitigation cannot extinguish a cause of action.
 
 
 25
 The majority reads Davis and Colaizzi as requiring actual termination of employment before a deprivation of liberty can occur. That, I submit, misconstrues the rulings in those cases, and the "plus" of the test is properly equivalent to governmental action in the course of termination which forecloses the freedom to take advantage of other employment opportunities.
 
 
 26
 The majority looks to Paul v. Davis and further concludes that "the injury Elbert suffered was not tangibly greater than the injury he would have suffered from the defamation alone." But the magnitude of the injury is not the distinguishing feature of Paul v. Davis. It is whether defamation "standing alone and apart from any other governmental action" stated a claim for relief under 42 U.S.C. § 1983. 424 U.S. at 694, 96 S.Ct. at 1157 (emphasis added).
 
 
 27
 In Paul v. Davis the plaintiff was not an employee of the State. The State in Davis, while capable of defaming the plaintiff, could not further stigmatize him by telling the world that because of his conduct the plaintiff was discharged from his employment. In this case, while interruption of employment never took place, the "other governmental action" was official announcement of the plaintiff's termination. The plaintiff alleges, and we must accept the allegation as true, that his employment opportunities were negatively affected and that he was unsuccessful in finding employment elsewhere after the announcement of his termination.
 
 
 28
 In Colaizzi v. Walker, supra, this court recognized that a valid claim for deprivation of liberty may be stated in a case of State termination of employment even when the employee has no property interest in his employment. It is that same liberty interest that the plaintiff seeks to vindicate here and further to recover damages for the employment opportunities from which he was foreclosed even though he was not deprived of a property right.
 
 
 29
 I would reverse the judgment of the district court dismissing Count I and remand the case for a trial on the merits relating to deprivation of the liberty interest. In all other respects, I would affirm.
 
 
 
 *
 The Honorable Harold A. Baker, District Judge of the Central District of Illinois, is sitting by designation
 
 
 [1]
 Ill.Rev.Stat. ch. 122 § 10-23.8 provides:
 To employ a superintendent under a multi-year contract. No such contract can be offered or accepted for less than or more than three years, except for a person serving as superintendent for the first time in Illinois. In such case, the initial contract shall be for a two year period. Such contract may be discontinued at any time by mutual agreement of the contracting parties, or may be extended for an additional 3 years at the end of any year.
 The contract year is July 1 through the following June 30, unless the contract specifically provides otherwise. Notice of intent not to renew the contract must be given by the board or by the superintendent by April 1 of the year in which the contract expires, unless the contract specifically provides otherwise. Failure to do so will automatically extend the contract for 1 additional year.
 Notice of intent not to renew a contract when given by a board must be in writing, stating the specific reasons therefor. Within 10 days after receipt of such notice of intent not to renew a contract, the superintendent may request a closed session hearing on the dismissal. At the hearing the superintendent has the privilege of presenting evidence, witnesses and defenses on the grounds for dismissal.
 By accepting the terms of a multi-year contract, the superintendent waives all rights granted him under Section 24-11 through 24-16 of this act for the duration of his employment as superintendent in the district.
 Elbert had previously served as superintendent in an Illinois district.