87 Ill. App.2d 269 (1967)
230 N.E.2d 893
James E. Lester, Plaintiff-Appellant,
v.
Board of Education of School District No. 119 of Jo Daviess County, Illinois, Defendant-Appellee.
Gen. No. 67-94.
Illinois Appellate Court  Second District.
November 3, 1967.
*270 *271 Gunner and Keller, of Dixon, for appellant.
Harold D. Nagel, of Stockton, for appellee.
MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.
The plaintiff, James E. Lester, herein called Lester, filed an action for administrative review, asking reversal of the decision of the Board of Education of School District No. 119 of Jo Daviess County, herein called the board, which relieved him of all administrative duties and assigned him to the position of teacher, with a reduction in salary from $11,500 to $6,800. The Circuit Court of the 15th Judicial Circuit affirmed the decision of the board and an order was entered dismissing the complaint.
On June 1, 1959, Lester was employed by the board to serve "as Superintendent of Schools and teach" for a period of nine months at an annual salary of $6,500. He executed a form contract which bore the entitlement, "Teacher's Contract  Teacher's Tenure Law (Board of Education)." It provided "that this contract is subject to the School Laws of Illinois and the reasonable and lawful regulations of said Board."
Lester acquired tenure as superintendent and teacher, and served as superintendent and principal during the 1964-1965 school year, with no teaching duties, at a salary of $9,000. In the 1965-1966 school year, he continued his duties as superintendent and principal, and was also assigned to teach all commercial subjects, at a salary of $11,500. The salary increase of $2,500 was due to the additional teaching duties. At this time, Lester held a life supervisory certificate which had been issued by the State Superintendent of Public Instruction pursuant to sections 21-1 and 20 of the School Code. (Ill Rev Stats 1949, c 122, pars 21-1 and 20.) This certificate qualified Lester to teach and supervise "in any and all grades of *272 the common schools" subject to the requirements set forth therein.
On March 25, 1966, Lester was duly notified by the board that effective with the next school term he would be relieved of his administrative duties, and would be assigned to the position of teacher at a salary of $6,300. The notice did not state any specific reason for the board's action.
Upon receipt of such notice, Lester promptly requested a bill of particulars and a hearing pursuant to the provisions of the Teacher Tenure Law relative to his removal and transfer as a teacher and his decrease in salary. The bill of particulars furnished by the board stated that Lester was not being dismissed or removed as a teacher, but was being relieved of his administrative duties; that he would be assigned as a teacher only; and that no question was raised as to his competency as a teacher.
A hearing was held by the board on May 18, 1966, pursuant to such request. At the conclusion of this hearing, the board reaffirmed its prior decision, except that it then voted to increase his salary for the next year from $6,300 to $6,800. The record indicates that Lester had a Master's degree; that $11,500 was the highest salary paid in the county to a school superintendent; and that the salaries of teachers in the county varied from $5,500 to $7,400 for the 1965-1966 school year. At no stage of this controversy was any question raised as to the competency of Lester as a teacher, and the record contains no statement as to the reason for the action of the board in relieving Lester of his administrative duties.
Section 24-11 of the School Code provides, among other things, that "teacher" means any or all school district employees regularly required to be certified under the laws relating to the certification of teachers; that "board" means a board of education; that any teacher who has *273 been employed as a full-time teacher for a probationary period of two consecutive school terms shall enter upon contractual continued service unless given a written notice of dismissal by the employing board at least sixty days before the end of such period; and that such contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to the provisions of the Teacher Tenure Law and the lawful regulations of the employing board. It further provides that this section and succeeding sections do not modify any existing power of the board, except with respect to the procedure for the discharge of a teacher and reductions in salary as thereinafter provided; and that contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill, or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as thereinafter provided in the case of certain dismissals or removals.
Section 24-12 provides, among other things, that a teacher may be removed or dismissed for the reasons or causes provided in section 10-22.4 of the School Code (Ill Rev Stats 1965, c 122, par 10-22.4), which are: incompetency, cruelty, negligence, immorality or other sufficient cause; and whenever in the opinion of the board the teacher is not qualified to teach or the interests of the schools require it. It further provides, that if the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal *274 and the reason therefor, and in all cases, the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has acquired such status and is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service; and that if the dismissal or removal is for any other reason or cause, it does not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher within 10 days after the service of notice as therein provided.
Lester contends that an individual serving as superintendent and teacher is entitled to retention in grade under sections 24-11 and 12 of the School Code (Ill Rev Stats 1965, c 122, pars 24-11 and 12); and that he was discharged by the Board in violation of the tenure provisions of the School Code.
The board concedes that Lester had "tenure" as a certified employee of the board, and that his salary could not be reduced without a hearing, but denies that he was entitled to continue in effect for succeeding years the terms and provisions of his contract during the last school term of his probationary period, in the absence of cause for removal. The board argues that such contention disregards that part of section 24-11 of the Code which states:
"Contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or removals." (Emphasis ours.)
*275 [1] The board further argues, and we agree, that it would be unreasonable to construe that part of section 24-11, which provides for the continuation "in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period," to mean that neither the board could vary the duties of the teacher thereafter nor the teacher teach or perform any services other than those specified in the contract of the last probationary year. People ex rel. McCoy v. McCahey, 296 Ill. App. 310, 323, 15 NE2d 988 (1938).
In McNely v. Board of Education of Community Unit School Dist. No. 7, 9 Ill.2d 143, 137 NE2d 63 (1956), the court held that a superintendent who did no teaching was included within the provisions of the Teacher Tenure Law, and his dismissal upon the subterfuge of abolishing the job, following which another was appointed to such position, was illegal. At page 147, the court stated:
"The Teacher Tenure Law was enacted primarily for the protection of educational personnel who, prior to its enactment in 1941, served at the pleasure of school directors or boards of education. Its object was to improve the Illinois school system by assuring personnel of experience and ability a contractual continued service status based upon merit rather than insecurity of employment based upon political, partisan or capricious consideration. Donahoo v. Board of Education, 413 Ill. 422; Betebenner v. Board of Education, 336 Ill. App. 448.
"It was for the legislature rather than this court to determine who should be embraced within the scope of its purpose. There is specific statutory direction for the inclusion of educational administrative and supervisory personnel of the type school district in question within the provisions of the Teacher Tenure Law. Judicial construction is not required to accomplish this result."
*276 At page 148, the court discussed the policy of the legislature in these words:
"It was the policy of the legislature to include within the Teacher Tenure Law only those employees required to be certified. It stated that policy by the simple method of defining teachers for the purposes of the act, as `any or all school district employees regularly required to be certified under laws relating to the certification of teachers.'"
And, at page 151, the court concluded as follows:
"In 1951 section 21-1 of the School Code was amended to provide: `No one shall teach or supervise in the public schools ... who does not hold a certificate of qualification....' (Ill Rev Stats 1951, chap 122, par 21-1.) We recognize that this subsequent legislation does not afford proof of prior status of the law; but the force of the long continued administrative construction of the school law requiring the certification of superintendents and public acquiescence therein, coupled with the later statutory enactment in conformity thereto, leaves us with the inevitable conclusion that superintendents are, under present law, and under prior law, `teachers' within the definition of the Teacher Tenure Law."
In the case of Wilson v. Board of Education of School Dist. No. 126 Union, Madison County, 327 Ill. App. 338, 64 NE2d 380 (1945), Wilson had acquired tenure as superintendent of the school district in question. The board, without notice or written charges, elected Brown superintendent of schools of the district to fill the position held by Wilson, and elected Wilson as principal of one of its schools at a reduced salary. The board contended that it was not restricted in its power to transfer a teacher to a position which the teacher was qualified to *277 fill, or to make such adjustments as it should deem desirable.
This court noted that the Teacher Tenure Law provided that unless the reduction in salary was uniform or based upon some reasonable classification, any teacher whose salary is reduced is entitled to notice and a hearing as provided in cases of certain dismissals or removals for cause. No notice was given or hearing held in Wilson. Accordingly, the court held that the transfer of Wilson was in violation of the Tenure Law.
It was held in People ex rel. McCoy v. McCahey, supra, that the transfer of a principal from the elementary schools to a high school or from high school to an elementary school, as the best interest of the respective schools may require, and in accordance with the rules of the board, is proper and valid. This case, however, was not governed by the provisions of the Teacher Tenure Law in question, but rather by the pertinent provisions of the School Code pertaining to cities of over 500,000 inhabitants. (Ill Rev Stats 1965, c 122, pars 34-83 through 34-85 (b).)
The foregoing cases, while pertinent, are not decisive of the exact question presented for determination in the case at bar. Here the board served notice on Lester that he would be relieved of his administrative duties, assigned as a teacher and his salary reduced, but no grounds or cause was specified for its action. Lester's salary was reduced from $11,500 to $6,800  an amount which exceeded his original salary by the sum of $300  and said tendered salary was comparable to the mean salaries payable in the county to other teachers holding a Master's Degree, as well as to those payable by the district in question.
The precise question for determination here is: whether under the provisions of the Teacher Tenure Law, a person employed as superintendent and teacher, who subsequently *278 becomes superintendent, principal and teacher, acquires tenure in the position of superintendent.
In the case of Richards v. Board of Education of Township High School Dist. No. 201, 21 Ill.2d 104, 171 NE2d 37 (1961), the court held that a salary reduction without notice and hearing is not improper so long as it is uniform or based upon some reasonable classification. The question presented in Richards was the legality of the school district's action in combining a program for professional growth in its salary schedule. After discussing the minimum salary provisions of the School Code, at pages 108, 109, 110 and 111 the court stated:
"The only other limitation upon the authority of the board to fix salaries, which has been found or brought to our attention, is in the Teacher Tenure Law....
"Section 7-14 of the School Code (Ill Rev Stats 1957, chap 122, par 7-14) grants to a board of education all of the powers given to school directors by article 6 of the Code. Among these powers are the passing of rules for the government of the school, and the fixing of salaries for teachers. See: Ill Rev Stats 1957, chap 122, pars 6-20 and 6-22. From the language the legislature has employed, it is clear that a school board has discretionary control over the salaries of its teachers, subject only to any limits expressly fixed by the School Code and to constitutional prohibitions against actions that are arbitrary, discriminatory and unreasonable, or based upon an improper classification....
"It is neither arbitrary nor unreasonable to classify or compensate teachers on the basis of their ability and value to the school system. Plaintiff makes no serious contention to the contrary, but insists that a salary schedule based upon professional *279 growth is discriminatory and based upon an unreasonable classification....
"Plaintiff further contends that defendant's salary program is in derogation of his life teaching certificate, and that it violates his tenure or continued contractual service status. We think he is mistaken in both respects. The fact that plaintiff has a life certificate does not guarantee him employment, nor compel any particular school board to hire him, nor does it mean that he is entitled to employment at a particular salary, or entitled to pay raises, regardless of his compliance with lawful regulations concerning such pay raises."
[2] In order for the salary reduction, which the board imposed on Lester, to comply with the provisions of section 24-11 of the School Code, it must either be "uniform" in its application to all of the teachers of the district, or it must be "based on some reasonable classification." The record indicated that the reduction was not uniform in its application. Therefore, unless it was "based on some reasonable classification," Lester was entitled to a notice and hearing as provided for in section 24-12 of the School Code with reference to dismissal for cause. Such notice was not given to him and he was not dismissed for cause, but rather was relieved of his administrative duties and assigned as a teacher at a reduced salary.
[3] Section 24-12 does not preclude the board from transferring a teacher to a position the teacher is qualified to fill or prohibit it from making such salary adjustments as it deems desirable as long as such reductions are uniform or are "based upon some reasonable classification." (Emphasis ours.)
The term "teacher" means any and all district employees regularly required to be certified under the laws relating to the certification of teachers. Thus, the *280 term "teacher" includes superintendents, principals, supervisors, and teachers, as well as certain other certified school employees. McNely v. Board of Education, supra 149. The Tenure Law permits the board to assign a teacher to a position the teacher is qualified to fill.
[4-6] For these reasons, we construe section 24-11 of the School Code to provide that a superintendent in the public schools does not acquire tenure in the position of superintendent, but rather acquires tenure as a certified employee of the school district. And likewise, we believe that a person serving as superintendent, principal and teacher, or in any two of such positions, may be assigned by the board to any one of the positions he is qualified to fill, provided such action by the board is bona fide and not in the nature of chicanery or subterfuge designed to subvert the provisions of the Teacher Tenure Law.
[7] We also believe that such bona fide assignment may be at a reduced salary in that such reduction would be "based on some reasonable classification." The salary reduction as applied to Lester, however, could not cause his salary to be below that paid by the district to other teachers in the same classification, based upon training, experience and duties. The evidence in the case at bar indicates that a salary of $6,800 for the 1966-1967 school year, which sum was offered to Lester, met these limitations.
[8] Our courts have often held that the Teacher Tenure Law is in derogation of the common law; that it makes a contract for the parties by operation of law where otherwise none would exist; that it creates a new liability on the part of school boards; and that, therefore, it should be construed strictly in favor of the board. Anderson v. Board of Education of School Dist. No. 91, 390 Ill. 412, 422, 61 NE2d 562 (1945); Lingle v. Slifer, 8 Ill. App.2d 489, 493, 131 NE2d 822 (1956); Donahoo v. Board of Education of School Dist. No. 303, 346 Ill. App. 241, 247, 104 NE2d 833 (1952); Biehn v. Tess, 340 Ill. App. 140, *281 148, 91 NE2d 160 (1950); 33 ILP, Schools, § 205, pp 192-195.
In addition to the foregoing reasons, we believe that this view finds support in the pragmatic facts attendant upon the operation of our public schools. The general assembly is charged by constitutional mandate to provide a "thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." (Article VIII, Section 1, Constitution of Illinois 1870.) It has empowered boards of education to accomplish this end, among which are the powers to adopt reasonable rules and to fix salaries for teachers. (Ill Rev Stats 1965, c 122, pars 10-20.5 and 10-20.7.) Subject to constitutional and statutory prohibitions, such boards must be allowed flexibility consonant with the purposes of the Teacher Tenure Law, in the bona fide assignment of its certificated personnel.
Consequently, the order of the trial court is affirmed.
Order affirmed.
MORAN and ABRAHAMSON, JJ., concur.