John A. DANNO, Plaintiff,

v.

Mr. H. T. PETERSON, General Superin-
tendent of Schools, For School District
89, et al., Defendants.

No. 76 C 879.

United States District Court,
N. D. Illinois, E. D.

Oct. 19, 1976.

Benjamin Goldstein, Chicago, Ill., for plaintiff.

Lawrence A. Passarella, Melrose Park, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge.

Before the court is the defendants' motion to dismiss the plaintiff's civil rights action for failure to state a claim upon which relief may be granted.[1] The plaintiff's complaint alleges that the defendant school board's determination to relieve the plaintiff of his duties as principal and reassign him to a regular teaching position violated his federally protected rights. The complaint alleges that the plaintiff has been employed by the defendant school board for an extended period of time, most recently in an administrative capacity as principal of the Lincoln School. In June of 1975 plaintiff was advised by the defendant school board of its determination to relieve

him of his duties as principal and to reassign him to a regular teaching position within the district. The plaintiff requested a hearing before the school board, and although the board found that such a hearing was not required, the plaintiff was given an opportunity to appear before the board. That hearing was held on July 24 and plaintiff alleges that the procedures at that hearing failed to comply with due process guidelines. Subsequent to the July 24 hearing, the board confirmed its reassignment decision, and released to the news media certain allegedly defamatory information regarding the reasons for plaintiff's transfer. Based on these allegations, the plaintiff's two count complaint seeks recovery for violations of the fourteenth amendment due process guarantees, alleging a deprivation of a "property" interest in his continued employment as principal, and a deprivation of a "liberty" interest in his reputation and good name.

"The fourteenth amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). The alleged property interest must be premised on more than the abstract need or desire for the benefit, and more than a mere unilateral expectation of it. Rather, the assertion of a property interest must rest on a "legitimate claim of entitlement." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. In the instant action, the plaintiff is unable to trace his alleged property interest to such a legitimate claim of entitlement under state law. *See, Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

The governing state law, the Teacher Tenure Act,[2] does not distinguish between

---

1. The defendants have raised several jurisdictional deficiencies which may be cured by appropriate amendment and do not form the basis of this decision. *Cf. Hostrop v. Board of Jr. College Dist. 515,* 523 F.2d 569 (7th Cir. 1975); *Calvin v. Conlisk,* 520 F.2d 1 (7th Cir. 1975).

2. Ill.Rev.Stat. ch. 122, § 24–11 (1975) provides: Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to this Act and the lawful regulations of the employing board. This section and succeeding sections do not modify any existing power of the board except

administrative and teaching personnel, and Illinois courts have "construe[d] Section 24–11 of the School Code to provide that a[n] [administrator] . . . in the public schools does not acquire tenure in the position of [administrator] . . ., but rather acquires tenure as a certified employee of the school district." *Lester v. Board of Education of School District No. 119,* 87 Ill.App.2d 269, 274, 230 N.E.2d 893, 898 (1967). To allow school boards flexibility consonant with the purposes of the Teacher Tenure Act, the Illinois courts have held that a person serving as an administrator may be reassigned to any position he is qualified to fill, such as teacher, provided that reassignment is "bona fide and not in the nature of chicanery and subterfuge designed to subvert the provisions of the Teacher Tenure Law." *Lester v. Board of Education of School District No. 119,* 87 Ill.App.2d at 274, 230 N.E.2d at 898. *See also, Van Dyke v. Board of Education of School District No. 57,* 115 Ill.App.2d 10, 254 N.E.2d 76 (1969).

The issue before the court is whether this line of Illinois authority is tantamount to a recognition of a "property" interest in continued employment as a principal or merely a state created remedy to insure teachers against wholly arbitrary school board action. The Illinois statute itself does not contemplate a legitimate claim of entitlement to continuation of employment in an administrative capacity. To the extent that the Illinois courts have interpreted this statute, no legitimate claim of entitlement to the continuation of employment in an administrative capacity is recognized in fact, and the language of these cases expressly authorizes the type of reassignment alleged in the instant case.

■ Yet *Lester v. Board of Education of School District No. 119, supra,* and *Van Dyke v. Board of Education of School District No. 57, supra,* engraft some restriction on the unfettered exercise of the state's power to reassign educational personnel from administrative to teaching positions. The judicial review in these cases adopts an after the fact analysis, reasoning that a transfer or reassignment which is not made in good faith and is intended to subvert the intent of the Teacher Tenure Act is in effect a removal or dismissal from continued contractual service requiring a hearing pursuant to section 24–12 of the school code. Ill.Rev.Stat. ch. 122, § 24–12 (1975). This court must reconcile the express language of these two cases and the Teacher Tenure Act that an administrator acquires no tenure in the administrative position and may be reassigned to a teaching position without a prior hearing, with the implicit creation of a state action to check those reassignments not made in good faith to subvert the tenure act. *Lester* and *Van Dyke* effectuate the legislative intent of assuring educators some measure of job security within the system, *McNely v. Board of Education,* 9 Ill.2d 143, 137 N.E.2d 63 (1956), while allowing school boards sufficient latitude to make necessary personnel decisions. *Lester v. Board of Education of School District No. 119, supra.* This sanction against arbitrariness in the state scheme cannot be equated with a recognition of legitimate entitlement to the continuation of the specific employment, and it cannot be viewed as such a "rules or understandings that secure[s] certain benefits and that support[s] claims of entitlement to those benefits" within the meaning of *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. *Cf. Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Based on this authority, the court is persuaded that Illinois statutory and case law does not recognize a property interest in continued employment in an administra-

with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided. Contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill or to make such salary adjustments as it deems desirable, but

unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or removals.

tive capacity with the defendant school board, but rather recognizes a property interest in continued employment with the board in any position that the individual is qualified to fill. The job security envisioned by the teacher tenure law is a guarantee of employment, but not a guarantee of continued employment in any single capacity when the educational employee is qualified to serve in more than one position.

The plaintiff's sole argument in support of the existence of a property right in continued employment in an administrative rather than teaching capacity rests on certain language in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) permitting the non-tenured teacher plaintiff to present evidence of a de facto tenure system arising from a "binding understanding fostered by the . . . administration." 408 U.S. at 600, 92 S.Ct. at 2699. The plaintiff in *Perry* predicated the claim of de facto tenure on a provision of the official Faculty Guide which the Court found could arguably create a reasonable and legitimate expectancy of continued employment. The Court in *Perry* specifically noted that the wellspring of any constitutionally protected property interest is state law, and in the absence of any controlling state tenure statute, extrinsic evidence of a policy or practice upon which a legitimate expectation of the continuation of the benefit is based should be admissible. The Illinois Teacher Tenure Act and the cases interpreting it control in this instance, and they preclude any reasonable or legitimate expectation of continued employment in a specific administrative capacity by the plaintiff. Thus the de facto approach of *Perry* is applicable where state law is silent as to the alleged property interest, but it cannot be relied upon where state statutory and case law define the extent of the claimed property interest.

It is important to note that the plaintiff in this action is not attempting to require a hearing under the language of *Lester* and *Van Dyke,* and the complaint does not allege that the school board action was in bad faith intending to subvert the teacher tenure law. Further, it must be noted that the plaintiff does not predicate his claim to a right to a hearing on any provision of the collective bargaining agreement. *See, e. g., Classroom Teachers Asso. v. Board of Education,* 15 Ill.App.3d 224, 304 N.E.2d 516 (1973). Rather, the plaintiff has simply alleged that he has "a constitutionally protected right to his position as principal of the Lincoln School" [Complaint paragraph 8], and this court finds no basis in Illinois law to support such an allegation. Accordingly, the claim set forth in count I for a deprivation of a property interest without due process fails to state a claim upon which relief may be granted.

■ In count II of the complaint, the plaintiff alleges a deprivation of liberty interests in violation of the fourteenth amendment guarantees, based on the publication of certain allegedly defamatory information regarding the reasons for his reassignment. Plaintiff contends that this alleged injury to his reputation and good name may be redressed by a federal civil rights claim. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) the Supreme Court held that the fourteenth amendment due process clause does not protect an individual from state action which places a stigma on his reputation or good name which does not interfere with some more tangible interests such as employment, the right to contract, the right of free speech, or the right to attend school. *See Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The court noted that the clear import of earlier Supreme Court cases is that mere defamation by a state official is not enough to deprive an individual of liberty interests, rather "the defamation [must] occur *in the course of the termination of employment.* Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who *continues to be an*

954

*employee." Paul v. Davis,* 96 S.Ct. at 1165 [emphasis supplied].

In the employment context, the Seventh Circuit Court of Appeals has interpreted this language in *Paul v. Davis* to formulate a "stigma plus" analysis, finding a deprivation of liberty interest where the state inflicted stigma is accompanied by a failure to rehire or by a discharge. *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir., 1976). In the instant case, the plaintiff was transferred from an administrative position to a teaching position, however, he was not discharged and he continued in the employment of the defendant school board. This reassignment situation is not addressed in *Colaizzi v. Walker,* and this court must determine whether allegations of stigma plus change in status or reclassification state a claim for deprivation of a liberty interest under the fourteenth amendment. When the state inflicts a stigma and discharges or fails to rehire an employee, the defamed employee is unemployed and his freedom to take advantage of other employment opportunities is foreclosed by the defamatory nature of the stigma. *Perry v. Sindermann, supra; Board of Regents v. Roth, supra.* The plaintiff in this action may well wish to seek other employment opportunities, however, he is still employed by the defendant school board. Whatever stigma may have been inflicted by the board in the allegedly defamatory remarks is greatly diminished by the simultaneous board action of assigning him to the position of teacher and continuing his employment in that significant capacity. The plaintiff in this action does not stand in the shoes of Colaizzi or Perry, as he need not seek further employment and the alleged stigma is minimized by his continued employment. Thus the court must examine the policy basis of *Colaizzi* and *Perry* to determine whether the language of those cases should be read expansively or restrictively in this reassignment situation.

Some guidance on this policy question has been furnished by the Supreme Court in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) which held that

"[i]n the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." 96 S.Ct. at 2080. The *Bishop* decision is premised on the nature of the stigma, finding that whatever stigma attaches to the private unpublicized discharge of a public employee is not cognizable as a deprivation of a liberty interest. While the Court does not address the reclassification issue of the instant case, the decision recognizes that not every discharge of a public employee "implicates a constitutionally protected liberty interest." 96 S.Ct. at 2080 n.14. Consistent with that reasoning, this court finds that the less severe state action of reassignment or reclassification is insufficient to require the liberty interest analysis of *Board of Regents v. Roth, supra,* and *Colaizzi v. Walker, supra.* "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies," *Bishop v. Wood,* 96 S.Ct. 2080, and this court declines to expand jurisdiction over personnel controversies to include those cases in which an employee is merely reclassified without being discharged.

Accordingly, as the court finds that plaintiff's allegations fail to set forth a claim for deprivation of a property or liberty interest in violation of the fourteenth amendment, the complaint fails to state a claim upon which federal relief may be granted. The defendants' motion to dismiss is GRANTED, and the complaint is hereby DISMISSED.