**Philomena BLANK, Plaintiffs,**

v.

**Donald G. SWAN; Barry Sherman; Daniel W. Burke; Arthur Fournier; Ronald Lundin; and York Township, Defendants.**

**No. 78 C 849.**

United States District Court,
N. D. Illinois, E. D.

March 25, 1980.

---

George F. Galland, Jr., Davis, Miner & Barnhill, Chicago, Ill., for plaintiffs.

Larry M. Karlin, George W. McGurn, Michael McGurn, Harry G. Fins, Chicago, Ill., Barry E. Garley, Villa Park, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court upon defendants' Motion for Summary Judgment. For the reasons set forth below, the Motion is denied.

Plaintiff, Philomena Blank (Blank) was hired by defendant Donald G. Swan (Swan) as an employee of defendant York Township (York) on March 15, 1970.[1] In 1973 Swan made her chief welfare caseworker and office manager. Swan, who remained her supervisor, gave Malci Agnic (Agnic) a job in their office in March 1976. On April 21, 1976, Swan sent Blank a letter which reads as follows:

Dear Mrs. Blank,

I am attaching a photostatic copy of a felony, which is known as intimidation. Effective Friday, April 22, 1977, I am suspending you as an employee of York Township.

Your case will be reviewed if you will secure competent professional help.

Upon a review of a medical report concerning your physical and emotional well being a final decision will be made concerning your employment.

Yours very truly,

York Township

Don Swan

Supervisor, York Township.

There is evidence that Swan publicized the charges that Blank was emotionally or mentally disturbed and that she had tried to blackmail him both before and after he sent Blank this letter.

Blank informally requested a hearing before the York Township Board of Trustees, but received none. She never requested a hearing before Swan. Since her suspension[2] became effective, Blank has received no further salary from York, no payments have been made on her behalf to the municipal retirement fund, and she has neither received nor been eligible for any benefits associated with employment with York.

After looking for a job for over a year, Blank obtained a clerical job with the Veterans Administration in Hines, Illinois. She held this position from September, 1978, until later in the year, when she moved to New York with her husband.

In Count I of her two-count Complaint, Blank alleges that defendants' actions during the course of this episode violated her rights under the Fourteenth Amendment to the Constitution of the United States. In Count II she seeks recovery from Swan for libel and slander under Illinois law.

The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law". Blank contends that defendants have unconstitutionally deprived her of a liberty interest by defaming her in connection with the change in her employment status.[3]

In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court announced that a constitutionally protected liberty interest of a teacher whose employment contract was not renewed by the State might be implicated if said non-renewal was based on a charge against him that "might seriously damage his standing and associations in his community," 408 U.S. at 573, 92 S.Ct. at 2707, or if "the State, in declining to reemploy [him], imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* Thus, the court acknowledged that

"[t]he concept of liberty recognizes two particular interests of a public employee:

---

1. Swan has been the Supervisor of York Township since April, 1969. He is also the *ex officio* Supervisor of General Assistance for York.

In the latter capacity, Swan had authority to hire Blank, supervise her performance, and suspend or terminate her employment.

2. The parties dispute the effect of Swan's letter. Blank contends that she was fired. Swan says that she was suspended and that she has never been fired or discharged from her employment with York. It is not necessary for the court to determine, at this time, which of these interpretations of the events described in the text is correct. For the purposes of this Opinion, the court will consider Blank's change in employment status to be a suspension.

3. The parties have not discussed the relevance to this case of *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and its progeny. *See, e. g., Eichman v. Indiana State University Board of Trustees*, 597 F.2d 1104 (7th Cir. 1979). Therefore, the court will not consider the question of whether Blank is entitled to any relief under such a theory.

1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities." *Lipp v. Board of Education of City of Chicago*, 470 F.2d 802, 805 (7th Cir. 1972).

*Paige v. Harris*, 584 F.2d 178 (7th Cir. 1978).

The scope of the protected liberty interests identified in *Roth* was subsequently narrowed by the Supreme Court in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). *See Webster v. Redmond*, 599 F.2d 793, 797 (7th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980); *Paige v. Harris*, 584 F.2d 178 (7th Cir. 1978). The Seventh Circuit Court of Appeals recently considered the import of *Davis* in *Larry v. Lawler*, 605 F.2d 954 (7th Cir. 1978), wherein it noted that

> *Davis* held that a liberty interest is not implicated when the only injury suffered as the result of government action is a stigma or damage to reputation.

> While we have in a number of prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from *some more tangible interests such as employment,* is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause. [424 U.S. at 701, 96 S.Ct. at 1160]. (Emphasis added).

605 F.2d at 958.

As this court observed in *Danno v. Peterson*, 421 F.Supp. 950 (N.D.Ill.1976), this Circuit has interpreted *Davis* as formulating, in the employment context, a "stigma plus" analysis. Thus, in *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51

L.Ed.2d 811 (1977), the court held that a liberty interest would be implicated where the State inflicted a stigma in conjunction with a failure to rehire or a discharge. And in *Larry*, the plaintiff was found to have a liberty interest at stake in a situation where a stigma was placed on him in connection with the rejection of his application for government employment, the effect of which was to totally debar him from all federal employment for up to three years.[4]

However, this court ruled in *Danno* that not every State-ordered alteration in an employee's employment status constitutes a sufficient "plus" to mandate the conclusion that that action, when accompanied by the State-inflicted stigmatization or defamation of the effected employee, implicates a liberty interest of the employee. More specifically, *Danno* holds that a school board's defamation of the plaintiff in conjunction with its determination to relieve him of his duties as principal and reassign him to a regular teaching position did not implicate the plaintiff's liberty interests.

Defendants here argue that Blank, who complains that she was summarily suspended on account of and defamed by defendants' false charge that she was mentally ill and attempting to blackmail Swan,[5] suffered no deprivation of a liberty interest because suspension is not the type of "plus" that will satisfy the test of *Davis*. They seize upon the statement in that case that

> it was not thought sufficient [in *Roth*] to establish a claim under § 1983 and the Fourteenth Amendment that there simply be a defamation by a state official; the defamation had to occur in the course of the termination of employment,

424 U.S. at 711, 96 S.Ct. at 1165, as a manifestation of the Court's belief that a *Roth*-type liberty interest will only be recognized where there is an allegation of defamation plus termination or non-renewal of employment.

4. While *Colaizzi* was a "protection of good name"—liberty case and *Larry* was a "stigma foreclosing other job opportunities"—liberty case, in each case the court considered the question before it to be governed by *Davis*.

5. Blank maintains that she was fired because she objected to the allegedly improper grant of, *inter alia*, general assistance benefits and government employment to Agnic, who Blank claimed to have been romantically involved with Swan.

The holding of the Court of Appeals in *Larry* refutes this argument with regard to the second prong of the concept of liberty identified in *Roth* and the reasoning underlying that decision applies equally in the context of the other aspect of liberty discussed in *Roth*. The significant language in *Davis* is that quoted in *Larry* and reproduced above. The passage relied on by defendants was a reference to the facts of the *Roth* case. Roth was suing the Board of Regents because they failed to renew his teaching contract. In the portion of the *Roth* opinion that was being interpreted by the *Davis* Court when it made the statement upon which defendants rely, the *Roth* Court merely observed that Roth might have stated a cause of action for deprivation of liberty if he had alleged that the non-renewal of his contract was accompanied by the directing of a defamatory accusation against him.

However, the court's rejection of the extreme position urged by defendants does not resolve the question of whether an indefinite suspension without pay is the type of "plus" that will suffice to allow a finding that a liberty interest exists. It is to that question that the court will now direct its attention.[6]

■ Defendants have cited no cases holding that this type of change is employment status in an insufficient "plus", and this court has found none. To the contrary, the court's researches have revealed that every court to decide this issue since *Davis* has found that suspension without pay does satisfy the "plus" requirement of the "stig-

ma plus" test. *See Victor v. Brickley*, 476 F.Supp. 888 (E.D.Mich.1979); *Doe v. Anker*, 451 F.Supp. 241 (S.D.N.Y.1978); *Allison v. City of Live Oak*, 450 F.Supp. 200 (M.D.Fla. 1978); *Bagby v. Beal*, 439 F.Supp. 1257 (M.D.Pa.1977); *Faulkner v. North Carolina Department of Corrections*, 428 F.Supp. 100 (W.D.N.Car.1977).[7] These decisions are supported by the reasoning found in numerous other opinions. *See e. g., Ventetuolo v. Burke*, 470 F.Supp. 887, 896–897 n.7 (D.R.I. 1978); *Virgin Islands v. Anderson*, 434 F.Supp. 1204 (D.V.I.1977); *De Bono v. Vizas*, 427 F.Supp. 905 (D.Col.1977). Finally, they are consistent with this court's holding in *Danno*. That decision was premised on the court's finding that because the plaintiff was still employed by the school system, he "[did not have to] seek further employment and the alleged stigma [was] minimized by his continued employment." 421 F.Supp. at 954. Blank, on the other hand, was indefinitely suspended without pay. Thus, she did not have the luxury of merely "*wish[ing]* to seek other employment opportunities". *Id.* (emphasis added).[8] Therefore, the court concludes that Blank's suspension was a sufficient "plus" to allow the court to find that her liberty interest was affected by defendants' actions.

Defendants argue that even if Blank has adduced sufficient facts to satisfy the "stigma plus" test in all other respects, no liberty interest was affected by her suspension because the allegedly defamatory statements were not made "in conjunction with" the suspension. Upon examination, however, this position reveals itself to be more accurately described in the following way:

---

**6.** Defendants do not deny the presence of State action. Nor do they contest the fact that the accusations allegedly made against Blank were such as "might seriously damage [her] standing and associations in [her] community". *See, e. g., Larry v. Lawler*, 605 F.2d 954 (7th Cir. 1978); *Ventetuolo v. Burke*, 596 F.2d 476, 484 n.13 (1st Cir. 1979); *Doe v. Anker*, 451 F.Supp. 241 (S.D.N.Y.1978).

**7.** Defendants claim that *Bagby* and *Doe* are distinguishable because the courts therein only found a liberty interest to exist because the stigma was inflinted in conjunction with the deprivation of a property right. This court does not agree with this restrictive reading of

these cases. However, even if this interpretation of *Bagby* and *Doe* was correct the "distinction" would be an irrelevant one. In *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976), *cert. denied*, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977), the Seventh Circuit Court of Appeals held that the "plus" need not be a deprivation of an interest constituting a property right.

**8.** Thus, cases involving suspension with pay, *e. g., Harris v. Harvey*, 436 F.Supp. 143 (E.D.Wis. 1977); *Gruenburg v. Kavanagh*, 413 F.Supp. 1132 (E.D.Mich.1976), are inapposite here.

*Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), holds that the defamatory charge must be published contemporaneously with the change in employment status if liberty is to be implicated, and, as this was not the case here, Blank's liberty interest was not implicated by defendants' actions.

Defendants have adduced no decisions endorsing their reading of *Bishop*. *Gentile v. Wallen*, 562 F.2d 193 (2nd Cir. 1977), seems somewhat supportive of their view, but other cases, *see e. g., Larry v. Lawler*, 605 F.2d 954 (7th Cir. 1978); *Webster v. Redmond*, 599 F.2d 793 (7th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980); *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C.Cir. 1977); *Bogart v. Unified School District 298 of Lincoln City*, 432 F.Supp. 895 (D.Kan.1977), appear to adopt a contrary interpretation of *Bishop*. However, in light of the uncertainties in this record concerning when and to whom publication was made, the court deems it inappropriate to take a position on this issue at this time. *Cf. Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

■ Next, defendants maintain that if Blank had a liberty interest in the premises, she should not be able to claim that she was deprived of it without due process because she failed to seek review of her suspension as provided for in the letter. Assuming, *arguendo,* that Swan would have given Blank a hearing if she had requested one,[9] the fact that she did not do so would not estop her from complaining about defendants' failure to provide her with a hearing prior to her suspension.

While defendants contend that Blank had no due process right to a pre-suspension hearing, *cf. Muscare v. Quinn*, 520 F.2d 1212 (7th Cir. 1975), *cert. dismissed as improvidently granted*, 425 U.S. 560, 96 S.Ct. 1752, 48 L.Ed.2d 165 (1976), the court concludes that, given the record before it, it cannot now determine whether or not due process calculus, *see e. g., Larry v. Lawler*, 605 F.2d at 959–963 (7th Cir. 1978), would support their position.

Finally, defendants argue that if Blank was deprived of liberty without due process of law in connection with her suspension, she is not entitled to relief by way of damages, which is what she seeks to recover in this lawsuit, but to an opportunity to clear her name. They rely on *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d 338 (5th Cir. 1978). In that case, the Fifth Circuit overturned the district court's award of back pay less interim earnings plus retention of plaintiff on defendant's payroll pending the conclusion of a *Roth* hearing. The Court of Appeals deemed these portions of the district court's remedy in a deprivation of liberty case involving the infliction of stigma plus non-renewal of a teacher's contract to be inappropriate because plaintiff had no right to continued employment with defendant.[10]

■ *Dennis* does not hold that *no* damages may be recovered by a successful plaintiff in a deprivation of liberty due process suit. Nor did *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), which is also cited by defendants. Indeed, the court has found no case holding that damages are categorically unavailable to a prevailing plaintiff in this type of suit. On the contrary, it seems settled that at least an award of nominal damages should be granted to a plaintiff who proves that he has been deprived of liberty without due process of law. *See, e. g., Rodriguez de Quinonez v. Perez*, 596 F.2d 486 (1st Cir. 1979); *Victor v. Brickley*, 476 F.Supp. 888 (E.D.Mich.1979) *(dictum ).*

■ However, the court need not resolve at this time the question of what type of

---

9. The court notes that the letter of April 21, 1977, does not use the word hearing, and that Swan nowhere states that he otherwise communicated to Blank the availability of a hearing at which she might attempt to refute the charges against her and clear her name.

10. A contrary conclusion has been reached by the Eighth Circuit. *See Wellner v. Minnesota State Junior College Board*, 487 F.2d 153 (8th Cir. 1973).

damages will be available to Blank should she prevail here. In the event that Blank does establish that she was deprived of liberty without due process of law, she will be entitled to a hearing before an entity other than this court at which she may attempt to "clear [her] name." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 574 n.12, 92 S.Ct. 2701, 2707 n.12, 33 L.Ed.2d 548 (1972). *See, e. g., Wellner v. Minnesota State Junior College Board*, 487 F.2d 153 (8th Cir. 1973). This is customarily made an element of the relief afforded in such cases, *see, e. g., Graves v. Duganne*, 581 F.2d 222 (9th Cir. 1978); *Doe v. Anker*, 451 F.Supp. 241 (S.D.N.Y.1978), and it is the clear implication of *Austin v. Board of Education of Georgetown Community Unit School District No. 3 of Vermilion County, Illinois*, 562 F.2d 446 (7th Cir. 1977), that this practice is to be followed by the courts in this Circuit. At the conclusion of that hearing, the court will be in a much better position to decide what further relief might be appropriate. *Cf. Rodriguez de Quinonez v. Perez*, 596 F.2d 486 (1st Cir. 1979); *Austin v. Board of Education of Georgetown Community Unit School District No. 3 of Vermilion County, Illinois*, 562 F.2d 446 (7th Cir. 1977). Therefore, the court will decline to rule at this time on the question of exactly what kinds of damages will be recoverable by Blank if she should prevail upon her constitutional claim. *Cf. Doe v. Anker*, 451 F.Supp. 241 (S.D.N.Y.1978); *Bagby v. Beal*, 439 F.Supp. 1257 (M.D.Pa. 1977).

Accordingly, defendants' Motion for Summary Judgment will be denied as to Count I.

■ Turning to Count II, the court concludes that it has the power to, and will, exercise pendant jurisdiction over Blank's state law claim against Swan for defamation. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Swan requests the entry of summary judgment in his favor on this Count on two grounds. First, he claims that he is absolutely immune from liability arising out of any defamatory statements made by him. Second, he argues that if he is not absolutely privileged in the premises, he is entitled to summary judgment because the remarks were covered by a conditional privilege.

■ Swan's Motion must be denied as to Count II. While Swan's position would seem to entitle him to invoke the immunity defense established by *Blair v. Walker*, 64 Ill.2d 1, 349 N.E.2d 385 (1976), and its progeny, *see, e. g., Ware v. Carey*, 75 Ill.App.3d 906, 31 Ill.Dec. 488, 394 N.E.2d 690 (1st Distr.1979); *Glass v. Jackson*, 65 Ill.App.3d 732, 22 Ill.Dec. 389, 382 N.E.2d 709 (3rd Distr.1978); *Loniello v. Fitzgerald*, 42 Ill. App.3d 900, 1 Ill.Dec. 560, 356 N.E.2d 842 (1st Distr.1976), in the proper case, due to the unsettled nature of the factual questions of whether, to whom and under what circumstances the allegedly defamatory remarks were made by Swan, the court can not now rule that they were "legitimately related to matters committed to his responsibility". *Blair*, 64 Ill.2d at 10, 349 N.E.2d at 389 (1976). *Cf. Catalano v. Pechous*, 69 Ill.App.3d 797, 25 Ill.Dec. 838, 387 N.E.2d 714 (1st Distr.1978). Nor can the court grant the Motion under Swan's backup theory. "A qualified privilege . . . is conditional upon the good faith and reasonable behavior of the defendant." *Blair*, 64 Ill.2d at 6, 349 N.E.2d at 387. Swan's good faith has been challenged by Blank, and that issue may not be resolved by way of a Rule 56 Motion.

Accordingly, defendants' Motion for Summary Judgment is denied.

It is so ordered.