Dennis DIEHL, Plaintiff,

v.

ALBANY COUNTY SCHOOL DISTRICT NO. 1, Defendant.

No. C85–0044B1.

United States District Court, D. Wyoming.

Sept. 14, 1988.

Patrick E. Hacker, Cheyenne, Wyo., for plaintiff.

David D. Uchner, Lathrop & Uchner, Cheyenne, Wyo., for defendant.

**ORDER GRANTING DEFENDANT'S RULE 50(b) MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT**

JOHNSON, District Judge.

I. BACKGROUND

On 13 June 1984, the Board of Trustees of Albany County School District No. 1

voted against renewing plaintiff's contract as Laramie High School basketball coach for the 1984–85 school year. Plaintiff brought this suit, presenting three federal claims and one state pendent claim. The federal claims were based on 42 U.S.C. § 1983, alleging deprivation of liberty and property under the fourteenth amendment and deprivation of free speech and privacy under the first amendment. Plaintiff's pendent state claim was for breach of implied contract. The jury found against plaintiff on all but the liberty interest claim. For deprivation of liberty without due process of law, the jury awarded plaintiff $33,000. The case is now before this court on defendant's motion for judgment notwithstanding the verdict.

## II. JUDGMENT NOTWITHSTANDING THE VERDICT

In deciding a motion for judgment notwithstanding the verdict, a court "must view all of the evidence and inferences therefrom in the light most favorable to the party against whom the motion is made." *Western Plains Service v. Ponderosa Development*, 769 F.2d 654, 656 (10th Cir.1985) (citing *Symons v. Mueller Company*, 493 F.2d 972, 976 (10th Cir.1974)). The motion is granted only when "the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made[.]" *EEOC v. University of Oklahoma*, 774 F.2d 999, 1001 (10th Cir.1985), *cert. denied, Board of Regents v. EEOC*, 475 U.S. 1120, 106 S.Ct. 1637, 90

L.Ed.2d 183 (1986), (quoting *EEOC v. Prudential Federal Savings & Loan Association*, 763 F.2d 1166, 1171 (10th Cir.1985)). "The question in each instance is not whether there is no evidence supporting the party against whom the motion is made, but whether there is evidence upon which the jury could probably find a verdict for that party." *EEOC v. University of Oklahoma*, 774 F.2d at 1001 (quoting *Yazzie v. Sullivent*, 561 F.2d 183 (10th Cir. 1977)). The evidence presented must conclusively favor one party such that reasonable men could not arrive at a contrary verdict. The standard is rigorous in an effort to provide minimal interference with the jury. *Western Plains Service*, 769 F.2d at 656.

## III. LIBERTY INTEREST

The fourteenth amendment prohibits a state from depriving a person of "liberty" without due process of law. Liberty is a broad and majestic term "purposely left to gather meaning from experience...." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). A liberty interest arises from a right or status previously recognized by state law,[1] *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976), *reh'g denied*, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976), or from an interest guaranteed in one of the provisions of the Bill of Rights that has been incorporated into the fourteenth amendment.[2] *Id.* n. 5. Plaintiff's liberty interest claim rests on alleged repu-

1. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, the Court drew a distinction between interests legally guaranteed by the state and interests that the state may protect against injury by virtue of its tort law. Among legal rights guaranteed by state law were the right to purchase or obtain liquor in common with the rest of the citizenry, the right to operate a vehicle on the highways of the state after obtaining a driver's license, and the right of parolees to remain at liberty as long as the conditions of the parole were not violated if so provided at state law. 424 U.S. at 708–11, 96 S.Ct. at 1164–65. State law protecting against injury by virtue of its tort law, such as for reputation, does not provide a legal guarantee that the conduct will not occur, but merely provides a remedy for damages.

2. In *Roth*, 408 U.S. at 572, 92 S.Ct. at 2706–07, while discussing the breadth of liberty guaranteed by the fourteenth amendment, the Court stated that

[w]ithout doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Id.* (quoting *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)).

**1536**

tational harm suffered in the course of nonrenewal of his coaching position.

 Under the "stigma plus" analysis set forth by the United States Supreme Court, injury to reputation alone does not provide a liberty interest claim. To qualify as a liberty interest, injury to reputation must be accompanied by "some more tangible interests such as employment...." *Id.* at 701, 96 S.Ct. at 1161. A liberty interest exists in favor of a public employee who is defamed by a state official in the course of termination or nonrenewal of employment. This is so even if the employee has no property right in the employment.[3] *See, e.g., Roth,* 408 U.S. at 566–67, 92 S.Ct. at 2703–04; *Bishop v. Wood,* 426 U.S. 341, 344–46, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *McGhee v. Draper,* 639 F.2d 639, 641 (10th Cir.1981).

**A. Stigma**

 "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707 (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). When these reputational interests are impinged upon by a charge of dishonest or immoral conduct, due process affords an opportunity to refute the charge. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. *See also Ewers v. Board of County Commissioners of Curry County,* 802 F.2d 1242, 1244 (10th Cir.1986) (statement that someone was "dragging out" the co-op projects and "padding the books"), *cert. denied,* —— U.S. ——, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988); *Harris v. Blake,* 798 F.2d 419 (10th Cir.1986) (statement that plaintiff was "incompetent and unethical"), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987); *Lentsch v. Marshall,* 741 F.2d 301, 304 (10th Cir.1984)

(statement that plaintiff was "dishonest"); *Walker v. United States,* 744 F.2d 67, 69 (10th Cir.1984) (statement that plaintiff had lied on a government employment application).

██ Only stigmatizing statements that are publicly made implicate liberty. *Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079; *Lentsch,* 741 F.2d at 304. Reasons for termination or nonrenewal given to an employee in private cannot impair the employee's interest in his "good name, reputation, honor, or integrity." *Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079. Statements made in the course of a judicial proceeding also do not support a liberty interest claim. *Id.* Even giving plaintiff all reasonable inferences from the evidence, the court cannot conclude that defendant stigmatized him.

On 13 June 1984, the board of trustees of Albany County School District No. 1 met and considered renewal of extra duty/extra pay positions within the district. The administration had earlier recommended that all holding these positions be renewed, including varsity basketball coach Dennis Diehl. After retiring to executive session, the board discussed the status of two coaches and decided not to renew plaintiff's contract. The board did not then divulge any reasons for this decision. As later revealed in deposition testimony, the board members disapproved of what they viewed as plaintiff's excessive profanity and excessive verbal and physical abuse of students. The board members did not discuss plaintiff's "morals" in executive session.

The nonrenewal of plaintiff's contract received much attention in Laramie, Wyoming. Bob Hammond, sports editor for the local newspaper, called several of the board members on the telephone and, in a written article, attributed to them, although not by name, the following quotes: (1) "If Mr. Diehl has done anything wrong, he knows what it is;" (2) The action was "the best

---

**3.** The jury rejected plaintiff's property interest claims on each basis presented. The Wyoming Teacher Employment Law, Wyo. Stat. §§ 21–7–101 through 21–7–114 (Supp. July 1986), defines tenure for teachers and describes the procedure for resignation and termination of initial contract and continuing contract teachers. Diehl's

services as high school basketball coach were performed as an extra service or duty. No tenure under Wyoming law attached. Wyoming law does not prohibit the termination of extra services, duties, or extra pay for such services. Wyo.Stat. § 21–7–111 (Cum.Supp. June 1988).

thing for the basketball program at Laramie High School. I won't elaborate any further;" and (3) "I just had a gut feeling this is something I had to do. It had a lot to do with some things in the past." There is no evidence of other public statements on this matter by the board members.

■ In making his liberty interest claim, plaintiff may not rely on statements arising from this lawsuit. *Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079. This eliminates the deposition testimony relating to plaintiff's "morals." Plaintiff cannot rely on statements made by board members in executive session relating to his conduct as a coach. These statements were made in private. *Id.* Plaintiff may rely on the comments made to the local newspaper, but the court concludes that they do not amount to deprivation of liberty interest.

In *Smith v. Board of Education of Urbana School District No. 116,* 708 F.2d 258, 265 (7th Cir.1983), school board members publicly stated reasons for not renewing a coach's contract. The reasons were similar to those expressed privately in executive session by the board members in this case:

> [A] change in coaches would be good for the school's athletic program, plaintiffs [head coaches of baseball and football] had over 50 years' combined coaching experience and it was time for a change, 'Good athletes do not go out for sports because they don't want to play for the present coaches,' and 'profanity, lack of respect, problems with discipline, fairness' were problems in the school's athletic program.

*Id.* at 265.[4]

In finding against a liberty interest claim, the court observed that "the Constitution did not require that the school board act secretly when it replaced plaintiffs so that they might have an easier time finding new employment." *Id.* (citing *Roth,* 408 U.S. at 578 n. 16, 92 S.Ct. at 2710 n. 16). The court concluded that liberty

> required only that members of the school board not make public statements so critical of plaintiffs' coaching abilities that it would be virtually impossible for them to find new employment in similar coaching positions or so critical of their persons that people in their community would no longer want to associate with them.

*Smith,* 708 F.2d at 265. The court acknowledged that the coaches may have found it somewhat easier to obtain other coaching jobs before their contracts were not renewed. *Id.* The evidence in this case, as in *Smith,* will not support a liberty interest claim.

■ Unlike in *Smith,* the board members in this case did not give a public statement listing specific reasons for the nonrenewal of plaintiff's contract. In *Roth,* 408 U.S. 564, 92 S.Ct. 2701, similar silence by state officials led the Court to decide that plaintiff had not been deprived of a liberty interest. As illustrated by *Lagos v. Modesto Cities Schools District,* 843 F.2d 347, 350 (9th Cir.1988), the same result applies to disputes over nonrenewal of coaching contracts:

> Lagos also has no constitutionally recognized liberty interest infringed by the defendants. He has not been stigmatized by his non-renewal; he has not been so burdened that he cannot take advantage of other employment opportunities. *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1101 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Who is a good coach

---

4. Under Tenth Circuit case law, not all unflattering remarks raise liberty concerns. Allegations of failure to conduct an investigation to the satisfaction of a supervisor are insufficient to call into question plaintiff's good name, reputation, honor, or integrity. *Bailey v. Kirk,* 777 F.2d 567, 573 (10th Cir.1985). Characterization of plaintiff as a slow worker with "poor work habits and low productivity" was not sufficiently stigmatizing to implicate a liberty interest. *Stritzl v. United States Postal Service,* 602 F.2d 249, 252 (10th Cir.1979). Cf. *Miller v. City of Mission, Kansas,* 705 F.2d 368, 373 (10th Cir. 1983) (Mayor's press release justifying termination deprived plaintiff of a liberty interest since it was "based on findings that police department 'morale was very low, the officers do not respect the Chief and Assistant Chief. The department has deteriorated to an extend [sic] that the men felt that they could not work effectively with the Chief and Assistant Chief.' ").

is apt to be the subject of debate. It is no shame to lose one's job in such an argument. We were assured in oral argument that John Lagos' coaching record was 'excellent.' We can understand his pain at not being renewed, at not having the continued opportunity to do what he loves to do. But his disappointment is not a loss of that liberty which the Constitution guarantees.

Plaintiff is entitled to all reasonable inferences from the evidence. Even so, this court cannot conclude that the public statements stigmatized him.

Neither can plaintiff show stigma by arguing that the unstated reasons for nonrenewal were based on incorrect assumptions. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop*, 426 U.S. at 350, 96 S.Ct. at 2080. Otherwise, "every discharged employee [could] assert a constitutional claim merely by alleging that his former supervisor made a mistake." *Id.* at 349, 96 S.Ct. at 2080. For the reasons set forth, the court concludes that plaintiff has not made a showing of "stigma" as contemplated in the "stigma plus" analysis.

### B. Plus

■ To succeed on a liberty interest claim, a plaintiff must also prove the "plus" in "stigma plus," namely, that reputation is tied "to some more tangible interests such as employment...." *Paul*, 424 U.S. at 701, 96 S.Ct. at 1161. In examining *Roth*, the Supreme Court in *Paul v. Davis* stated that "defamation had to occur in the course of termination of employment." 424 U.S. at 710, 96 S.Ct. at 1165. Tenth Circuit case law also recognizes the need for termination or nonrenewal of employment. *See, e.g., Ewers*, 802 F.2d at 1248–49; *Daley*, 777 F.2d at 572–73; *Walker*, 744 F.2d at 69; *Lentsch*, 741 F.2d at 304; *Miller*, 705 F.2d at 373; *McGhee*, 639 F.2d at 643 n. 2. Plaintiff argues that the "plus" in "stigma plus" is met when a coach's contract is not renewed, even when he retains his teaching position and two junior high coaching assignments. This court disagrees.

Plaintiff's argument ultimately rests on decisions involving loss of employment. This case differs substantially in that plaintiff retained his employment as a teacher. He also continued coaching at the junior high level. This court is persuaded by the reasoning in *Danno v. Peterson*, 421 F.Supp. 950 (N.D.Ill.1976). In that case, a school board had relieved plaintiff of his duties as principal and reassigned him to a regular teaching position.[5] After observing that plaintiff retained employment with defendant, the court made the following statement based on *Paul v. Davis:*

> The court noted that the clear import of earlier Supreme Court cases is that mere defamation by a state official is not enough to deprive an individual of liberty interests, rather 'the defamation [must] occur *in the course of the termination of employment.* Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who *continues to be an employee.*'

*Id.* at 953 (citing *Paul*, 424 U.S. at 710, 96 S.Ct. at 1165) (emphasis in *Danno*). Based on this language from *Paul v. Davis*, the court concluded that a liberty interest could not be stated when a plaintiff retained employment with the defendant. In support of this view, the court reasoned as follows:

> The plaintiff in this action may well wish to seek other employment opportunities, however, he is still employed by the defendant school board. Whatever stigma may have been inflicted by the board in the allegedly defamatory remarks is greatly diminished by the simultaneous board action of assigning him to the position of teacher and continuing his employment in that significant capacity. The plaintiff of this action ... need not

---

**5.** As was the case with plaintiff Diehl's basketball coaching, the principal in *Danno* had no tenure in his administrative post.

seek further employment and the alleged stigma is minimized by his continued employment.

*Danno,* 421 F.Supp. at 954. Based on this reasoning, plaintiff cannot state the "plus" in "stigma plus."

IT IS THEREFORE ORDERED that defendant's motion for judgment notwithstanding the verdict be granted.